NATHANIEL L. THOMPSON *versus* DAVID S. THOMPSON.

Where a bond with surety is given by the guardian to secure the ward against official neglect or misconduct, the relation of debtor and creditor arises at the time of signing of the bond, and the obligee or those whom the bond is designed to protect, as creditors may impeach any conveyance made after its date, though prior to any breach of the bond.

THIS was a writ of entry on the seizin of the demandants, in which they claimed to recover a tract of land in Kennebunkport. The general issue was pleaded.

To support their action the demandants read in evidence a bond given to the Judge of Probate for the County of York, signed by Phineas Ricker as guardian of the demandants and by Benjamin Thompson and Joshua Roberts as sureties, dated Oct. 2, 1820 — also a judgment on *scire facias* against the said Thompson and Joshua Roberts at the Sept. Term, 1838, of this Court, to revive a former judgment in favor of the Judge of Probate for said county, against them, and an execution issued thereon, for the benefit of the demandants — and an extent upon the demanded premises as the property of said Benjamin Thompson, on 26th Nov. 1838.

The defendant then read in evidence a deed from said Benjamin Thompson to him, dated Nov. 13, 1820, acknowledged Nov. 14, 1820, and duly recorded, of the demanded premises and other lands which were included in the same conveyance.

The demandants then read in evidence a copy of a deed from Benjamin Thompson to Benj. Thompson, Jr., his son, dated Nov. 14, 1820, duly acknowledged and recorded, conveying a valuable farm, estimated to be worth from three to four thousand dollars.

A copy of the schedule of the sums proved to have come into the hands of said Ricker as guardian, which was filed in the case in which the judgment on *scire facias* was rendered, was offered. From this schedule it appeared that the first sum received by Ricker, was of the date of Dec. 16, 1820, and

that the whole amount received by said Ricker exceeded seven thousand dollars.

Benjamin Thompson, Jr. and David L. Thompson, are sons of Benjamin Thompson, senior, and the demandants are his grandchildren.

Evidence was introduced on the part of the tenant, tending to show that the conveyance from Thompson, senior, to the tenant was *bona fide* and for a valuable consideration — and on the part of the demandants, that in fact no consideration was paid, and that the deed was fraudulent and void as to existing creditors.

The counsel for the tenant contended, that this land conveyed by said Benjamin Thompson, senior, to the tenant, was conveyed to him in payment of a debt which they contended was proved to be justly due from the grantor to the grantee, and also contended, that if the jury should be satisfied that the said conveyance from Benjamin Thompson to the tenant, was made without a full and valuable consideration paid therefor, but in whole or in part, a gift, and only in settlement of his estate, and were also satisfied, that the said Phineas Ricker, the former guardian of the demandants, had not received any money or property for which he was accountable as guardian of the demandants, at the time the deed was executed and delivered — that the demandants were not to be considered prior creditors, because the said guardianship bond had been previously executed and delivered and that the action could not be maintained.

But Emery J. who tried the cause, instructed the jury that the plaintiffs from the time of the execution of the guardianship bond, were to be considered as creditors of the said Benjamin Thompson, senior, and entitled to impeach the conveyance made afterwards by said Benjamin to the tenant — and submitted the question to the jury, whether the deed aforesaid was without consideration and fraudulent, or not.

The jury returned a verdict in favor of the demandants. If the instructions given, were erroneous, the verdict is to be set

aside and a new trial granted; otherwise judgment is to be rendered on the verdict.

*Howard,* for the tenant, with whom was *J. Shepley.*

1. If the conveyance was voluntary, it is good against subsequent creditors, there being no proof of fraudulent intention. The jury did not find actual fraud. *Sexton* v. *Wheaton,* 8 Wheat. 229; *Hinde's Lessee,* v. *Langworth,* 11 Wheat. 199; *Seward* v. *Jackson,* 8 Cow. 406; *S. C.* 5 Cow. 67; *Cadogan* v. *Kennett,* Cow. 432; *Doe* v. *Rutledge,* Cow. 705; *Briggs* v. *French,* 2 Sum. 251; *Howe* v. *Ward,* 4 Greenl. 195. In the case of *Howe* v. *Ward,* the breach of the bond was before the conveyance. In this it was subsequent. The case, 5 Cow. 67, is based on *Jackson* v. *Myers,* 18 Johns. 425; but it was subsequently reversed in *Seward* v. *Jackson,* 8 Cow. 406. The case in 18 Johns. 425, was a case of actual, not constructive, fraud; and refers to Roberts on Fraudulent Conveyances, 499. In the case there referred to, the conveyance was found actually fraudulent.

2. The plaintiff was not a creditor at the time of the conveyance to the tenant, and consequently is not entitled to impeach this conveyance. Benjamin Thompson was not liable upon the bond till a breach. The bond was not given for the payment of money. No action could be sustained till a breach, for Ricker had then received no property. If Ricker had deceased, or been removed, there would have been no indebtedness upon the bond. The liability of Thompson upon this bond was contingent; it did not happen till after this conveyance, and might never have happened. A discharge in case of bankruptcy would not have been a bar to the liability under this bond, unless there had been a breach. Bonds, of which there has been no breach, are not choses in action; property, not debts. *Lansing* v. *Prendergast,* 9 Johns. 127; *Frost* v. *Carter,* 1 Johns. Cases, 73; *Buel* v. *Gordon,* 6 Johns. 126; *Mechanics' Bank* v. *Capron,* 15 Johns. 467; *Mills* v. *Aurial,* 1 H. Black. 433; *Utterson* v. *Vernon,* 3 T. R. 539; *Aurial* v. *Mills,* 4 T. R. 94; *Young* v. *Hackley,* 3 Wils. 346; *Root* v. *Wilson,* 8 East, 310; *Westerdell* v. *Dale,* 7 T. R.

Thompson *v.* Thompson.

305 ; 1 Story's Eq. 359, 369, 345, 410 ; Fonblanque's Eq. 1, c. 4, § 12 ; Roberts on Fraud. Conv. 396.

3. This was not a voluntary conveyance. There was a debt due the grantee. To constitute a voluntary conveyance, it must be without any valuable consideration. *Jackson* v. *Peck,* 4 Wend. 300; *Spencer* v. *Harford,* 4 Wend. 383 ; Roberts on Fraud. Conv. 61–74.

4. If the conveyance was voluntary, it is not to be impeached, if the grantor was then solvent — which was the case here. *Taylor* v. *Mills,* Cowp. 525 ; *Hinde's Lessee,* v. *Langworth,* 11 Wheat. 199.

Outstanding bonds are not to be considered debts — if it were so, they would constitute a perpetual injunction not to convey — they would be a perpetual lien on the property of the surety so signing.

5. At the time of this conveyance, the guardian had not received any thing. He was then a creditor of the ward, and not the ward a creditor of his. He had then advanced the expenses incurred by him as guardian. *Fales* v. *Thompson,* 1 Mass. R. 134 ; *Meserve* v. *Dyer,* 4 Greenl. 52 ; *Reed* v. *Woodman,* 4 Greenl. 400 ; *Riggs* v. *Thatcher,* 1 Greenl. 72 ; *Little* v. *Little,* 13 Pick. 425.

*N. D. Appleton* and *D. Goodenow,* for the demandant. As between the plaintiff and defendant, the case stands precisely as if Thompson was the principal on the bond. The bond given to the Judge of Probate was prospective in its design — being to secure the minor. It was a contract, the parties to which stood in the relation of debtor and creditor. The intention was to obtain continuing and abiding security. The bond was intended to be for years, and to protect the rights of those who were devoid of a natural protector.

The case of *Howe* v. *Ward,* 4 Greenl. 195, establishes the correctness of the ruling of the presiding Judge, and is stronger than the case at bar — as that was the case of an implied promise, this the case of an express contract. *Meserve* v. *Dyer,* 4 Greenl. 52.

The opinion of the Court was delivered by

TENNEY J. — This is a case where the demandants have obtained judgment in the name of the Judge of Probate, on a bond executed by their guardian, against the sureties thereon, one of whom was the grantor to the defendant of the land in controversy, and have made a levy of an execution issued on said judgment.

The demandants attempted to impeach the conveyance to the defendant as fraudulent against creditors, and the only question is on the correctness of the ruling of the Judge who presided in the trial, that the demandants were creditors at the time of the conveyance, and so at liberty to take that ground. The verdict settles the fact of a fraudulent conveyance; but whether by actual or legal fraud, does not appear, and we do not consider it material. It is insisted, that as there was no breach of the bond, consequently no cause of action arising thereon at the time of the execution and delivery of the deed to the defendant, he was not a creditor. The demandants rely upon the case, *Seward, plaintiff in error,* v. *Jackson,* 8 *Cowen,* 406, in which the judgment rendered for the defendant in error, reported in 5 Cowen, 67, was reversed. Other cases are cited on the same side, as analagous to the one at bar. The judgment in 5 Cowen was reversed, but it appears, that it was not in consequence of a supposed error in the court in regarding the defendant in error a creditor. — On this question the chancellor gave no opinion, but after fully considering other points in the case, thought the judgment should be reversed for error in the court on those other points. — One senator thought there were fatal errors other than the one discussed upon that point, and was of opinion, that the defendant was not a creditor; another was in favor of reversing the former judgment, though he held him to have been a creditor ; no other member of the court of errors discussed the questions presented in the argument. The decision then of the court in the first case reported, is not to be considered as disturbed on the question now under consideration, and in the opinion of the court it is said, " the demand in this case, fundamentally as it is expressed

by Roberts, in his treatise on fraudulent conveyance, p. 459, arose before the conveyance. It arose upon a covenant prior in date to the conveyance, for the performance of a collateral, and if you please, contingent act. But it cannot be said, that the covenanter was ignorant of his liability, &c. The demandants also cite the case of *Howe* v. *Ward*, 4 Greenl. 195. In that case there was a breach before the conveyance, but the remarks of the court apply to this case, and we think they are sound. Mellen C. J. says, " so far as the obligee of a bond or the promisee of a note is concerned, the principal and sureties are each and all equally liable, but as between and among themselves each surety is liable for his proportion. What, then, is the relation in which one of the sureties stands to each of the others? The answer is, *at the time* of executing an instrument by several persons as sureties each one impliedly promises all the others, that he will faithfully perform his part of the contract and pay his proportion of loss arising from the total or partial insolvency of the principal, and to indemnify them against any damages by reason of his neglecting so to do. A similar promise is implied on the part of the principal, to indemnify and save harmless each of the sureties. This promise is in both cases conditional in its nature. The principal may remain solvent and punctually pay the debt; and again, in the case of the failure on the part of the principal to pay, each surety may honestly pay his due proportion. It is a promise, which may never be broken, but it is binding until it is broken or performed. In this respect such a promise resembles that by which a man binds himself to pay a certain sum of money on a certain day; here a debt exists *in presenti*, though payable *in futuro*. The debt exists long before the right of action accrues for its recovery." All these obligations and implied promises arise from the express and direct covenant in the bond. The latter is the only foundation on which they can rest, and without that basis, they cannot exist; and consequently it cannot be less binding than those which grow out of them.

What is the object intended to be secured, by the require-
ment of the statute, that such a bond shall be taken ? Can it
be.treated as having no existence, until there is some misman-
agement, some pecuniary liability aside from the bond, resting
upon the principal obligor ? Or is it not rather that there shall
be the acknowledgement of an existing debt, to be cancelled
only, when all duties required are fully discharged ? It is giv-
en in the expectation, and it is accompanied with the power
and the duty of taking the whole property of the ward into the
custody of the guardian, whatever the amount may be. Those
to be benefitted, are incapable of speaking for themselves, and
protecting their own rights; their property, it may be, to almost
an unlimited amount, is secured by nothing but the official
bond of the guardian. To the Judge of Probate is entrusted
the power to guard these rights of wards, which are often be-
yond their own control, and his duty is co-equal to his power.
He is required to take to himself a bond sufficient in amount
and ability, of the obligors, to cover all probable contingencies.
The Judge would be treacherous to this high trust, if he ac-
cepted sureties not possessed of means adequate to the restor-
ation to those entitled, of the property received. Gross negli-
gence in this respect would be visited by impeachment and
removal from office. And why all this requirement for the
protection of minors and others incapable, if the obligors can
immediately after and before any breach of the bond, divest
themselves of all which rendered their names valuable, by vol-
untary or fraudulent conveyances ? The treatises on the 13th
and 27th Elizabeth, regard all obligees in bonds as creditors
from their execution, and Lord Mansfield has said, " these
statutes cannot receive too liberal a construction, or be too
much extended in suppression of fraud." *Cadogan* v. *Ken-
nett*, Cowp. 432. The sureties on such bonds know their
liability, and are supposed to be apprized of their danger, often
before a breach. They may see the extravagance and mis-
management, generally, of their principals, before any of the
property which they are appointed to protect may have come
to their hands: they may wish to escape from their obligations,

whether present or future, and the doctrine contended for by the demandant's counsel, would enable them always to shun their liability, throwing the loss from themselves upon those, who, it is the plain intention of the law, should be made secure.

We are, therefore, of the opinion, that the only instruction objected to was correct, and that there must be

*Judgment on the verdict.*