Danforth *v.* Adams.

## SUPREME COURT OF ERRORS.

### LITCHFIELD COUNTY, APRIL TERM, 1860.

Present,

STORRS, C. J., HINMAN, ELLSWORTH AND SANFORD, JS.

WILLIAM H. DANFORTH *vs.* SALMON ADAMS AND ANOTHER.

Where a person through misapprehension, ignorance, or inadvertence, does acts or makes declarations that mislead another to his injury, but where at the same time there is no willful deception or culpable negligence, and no intention that the representation should be acted on as true by the other party, and nothing that is equivalent to a promise that the representation is true, the person making the declarations or doing the acts is not estopped from proving the truth against the party thus misled.

ASSUMPSIT, upon a note for $2,735, signed by S. Adams & Co., and payable to the plaintiff. The defendants were Salmon Adams and Lorenzo F. Fuller, and were sued as partners under the name of S. Adams & Co., and the principal question on the trial was, whether the defendant Fuller was liable upon the note with the defendant Adams, as such partner.

On the trial upon the general issue closed to the court, the plaintiff, to show that Fuller was a partner in the firm, introduced evidence of divers acts and declarations of his, addressed to the plaintiff, or made and done in his presence, such as the signing of the business paper of the firm with the name of S. Adams & Co., and expressions in which he referred to the business of the firm as *his* business, at sundry times when goods were purchased of the plaintiff for the firm on credit, and when money was borrowed of the plaintiff for the firm. The court found that in fact no partnership existed between

the defendants, and that Fuller did not by his acts and declarations designedly induce the plaintiff to believe that there was such a partnership, but found that the acts and declarations were well calculated to induce the plaintiff to believe that he was a member of the firm, and that such was their. natural consequence and effect upon a person of ordinary understanding, that the defendant Adams well knew the same, and that the plaintiff was actually led to believe and did believe that Fuller was such partner and loaned the money for which the note was given in consequence of such belief, giving credit to Fuller as well as to Adams. The court therefore held that the defendant Fuller was estopped from claiming that he was not a partner.

The court having rendered judgment for the plaintiff, the defendants moved for a new trial.

*L. F. Robinson,* in support of the motion.

The acts and declarations of Fuller, construed as representations, could not have operated as an estoppel, because they were not intended to convey the impression which the plaintiff received from them. 1st. A misrepresentation of a fact, in order to debar the party making it from proving the truth concerning such fact, must be willful. *Howard* v. *Hudson,* 20 Eng. L. & Eq., 48, 53. *Whitaker* v. *Williams,* 20 Conn., 104. *Preston* v. *Mann,* 25 id., 118. Granting that the term " willful," as used in the authorities, has no reference to the motive of the party making the representation, that it is unnecessary that he should have any positive desire to produce a particular result or impression, yet it should at least appear that he intends to make the representation imputed to him. The doctrine would be shorn of all equity, if a party could be prevented from proving the truth because another, by misconstruction, had understood him to assert the contrary. To be bound by his representation, he must make it knowingly. *Pike* v. *Acker,* Lalor's Supplement to Hill & Denio, 90. *Coote* v. *Lighworth,* F. Moore, 457. *Whitaker* v. *Williams,* supra. 2d. The representation, it is well settled, must be contrary to the fact which the party who is claimed to be

Danforth *v.* Adams.

estopped offers to prove. If the fact offered to be shown is true, then the representation must be untrue ; it must be a misrepresentation, or at least designed to be understood in an untrue sense. *Titus* v. *Morse*, 40 Maine, 348. It must be inconsistent with the evidence which he proposes to give. *Dezell* v. *Odell*, 3 Hill, 221. *Carpenter* v. *Stilwell*, 12 Barb., 128. Fuller never asserted that he was a partner. His acts and words were perfectly consistent with the fact that he was not. The naturalness of the misinterpretation by the plaintiff can make no difference.

*Barbour*, with whom was *G. Collier*, contra.

The defendant Fuller was properly held by the court below to be estopped from denying that he was a partner in the firm of S. Adams & Co. The motion does not state what the acts were, but that they were divers acts and declarations of Fuller, made while transacting business in the name of the firm, which were well calculated to induce the plaintiff to believe that he was a member of the firm, and that the plaintiff was in fact induced by them so to believe, and loaned his money in consequence, and upon the credit of Fuller as a member of the firm. The case falls precisely within the principle laid down in *Preston* v. *Mann*, 25 Conn., 118, 128, where it is held that it is not necessary that the representation should be fraudulently or willfully made, but that it is enough that the natural effect of the conduct of a party is to induce the other party to believe and act as he does. And this is but an application of the ordinary principle, that a party shall be held to have intended the natural consequence of his acts. It is not too much to require of every man that he should guard his language and conduct where others may be affected by them, and it is not unreasonable that he should be held responsible for the natural consequence of his acts. *Roe* v. *Jerome*, 18 Conn., 138. *Pickard* v. *Sears*, 6 Ad. & El., 469.

HINMAN, J. The defendants were sued as partners, and were found by the superior court to be liable as such, although it was found as a fact that they had not been in partnership.

This result was arrived at on the ground that certain acts and declarations of the defendant Fuller, though not intended to induce a belief in the existence of the partnership, yet, as they were well calculated to induce such a belief, and such was their natural consequence and effect upon ·persons generally, and the plaintiff was led by them to believe that the defendants were partners, and to give them credit as such, estopped him from showing that he was not a partner.   Under the circumstances of this case, we think the court came to a wrong conclusion.   It often happens, perhaps it is generally true, that where one of two innocent persons must suffer, it is equitable that the loss should fall upon the one who has been the cause of the injury, rather than upon the other, who is not only innocent but without fault in the matter.   And so it is sometimes true that an innocent party may be estopped to allege and prove the truth, in consequence of acts or declarations calculated to mislead, and upon the faith of which others have acted.   And it frequently happens that, by the application of one or both of these principles, the rights of parties in particular cases are determined.   But no court has ever adopted them as technical rules, of universal application to every case which will admit of being brought within one of them ; and we think the circumstances of this case show that it would be very unsafe to do so.   The court was governed undoubtedly by what was supposed to be the principle involved in the case of *Preston* v. *Mann*, 25 Conn., 118, in which it was said that, where the natural consequence of the words or conduct of a party will be to influence another to change his conduct, he is legally chargeable with an intent or design to induce the other to believe him and to act upon that belief, · if such prove to be the actual result, whatever his motive may be.

As applicable to that case the proposition was very correctly stated.   But it was stated with the caution which becomes the statement of a principle liable to be misapplied ; and the court commenced its discussion of that part of the case with the remark that, in sustaining the charge of the court below, it might be approaching the verge of the law.   And again, it

was remarked, that inasmuch as the doctrine of estoppel especially concerns conscience and equity, it is undoubtedly true that ignorance, unaccompanied with culpability of any kind, ought to excuse conduct and language which would otherwise render the author justly responsible for the injury resulting to another who had placed confidence in him; and the case was put upon the ground that it came within the class of cases where there is such gross culpability as to operate as an estoppel. Now, without stopping to comment upon any of the numerous cases on this subject, we think the case just alluded to, as well as the general current of the authorities, establish the principle that, where there is nothing in the conduct or declarations of a party that can be imputed to him either as culpable negligence or a willful misrepresentation, or the representation was not intended to be acted upon as a statement of the truth, or is not tantamount to a promise or agreement that the declaration made is true, and consequently amounts to a guaranty that the party making it will be responsible for the consequences of any injury resulting from acting upon it, the party who, through misapprehension, ignorance, inadvertence, or for any similar cause, unfortunately makes declarations or does acts which have the effect to mislead, is nevertheless not estopped from alleging and proving the truth when it is attempted to make him responsible for the injurious consequences of such acts or declarations; for otherwise it would result that the most innocent declarations and acts, made or done even in the discharge of duty, might subject a party to an action. From the statement of the case it may be inferred that the defendant Fuller was the clerk or agent of the defendant Adams, whose business was transacted under the name of S. Adams & Co., and that, as such clerk or agent, he from time to time had occasion to sign the name under which the business was transacted, and while so transacting business frequently spoke of it as *his* business,—that is, as we suppose, using, as is very common with clerks, the plural number, and calling the business " our business." Now it may be true that such acts and declarations are calculated to induce the belief that the persons thus

acting are themselves parties to it as principals and not as agents merely, and the natural consequence upon persons of ordinary understanding may be to induce such a belief.   But ought a creditor to trust his property or his money upon the faith of such loose and apparently casual acts and declarations as these?   If he does so is he not equally negligent, to say the least, with the clerk who makes the declarations?  Such acts and declarations are well known to be common where business is transacted by clerks—so common, probably, that most persons dealing with them would not rely upon them as any evidence that they were dealing with principals and not with clerks.   The declarations which appear to have been made by Fuller are, certainly in a popular sense, perfectly consistent with his having no interest except as an agent in the business he was speaking of when he called it his.   We suppose nothing is more common than for the villagers, in a place where there is but a single mercantile establishment, whether it is a factory, store or bank, to speak of it as " our " store, or " our " factory or bank, without any reference to their interest in the establishment itself.   And for a clerk to do it does not seem to us as even very strong evidence that he is a principal in the establishment, much less does it seem sufficient to estop him from denying that he is a partner.   We therefore are of opinion that the court erred in holding the defendant Fuller to be estopped from showing that he was not a partner, in consequence of the acts and declarations stated in the motion; and on that ground we advise that a new trial be granted.

In this opinion the other judges concurred.

New trial advised.