DeBERRY, *Appellant,* v. WHEELER *et al.*

Division One, March 30, 1895.

1. **Husband and Wife:** DEBTOR AND CREDITOR: FRAUDULENT CONVEYANCE. A conveyance by the husband solely for the purpose of transferring to his wife land held in trust for her is not fraudulent as to the creditors of the husband.

2. ———: ———: ———: ESTOPPEL. Where land was bought with the proceeds of a sale of a wife's land and the deed to the land so purchased taken and recorded in the name of her husband, who, subsequently, without his wife's knowledge and out of the course of his business, became liable as surety on a note, she will not be estopped to deny the husband's title, although the creditor of the husband loaned the money for which the note was given upon the faith of the latter's apparent ownership of the land.

*Appeal from Clinton Circuit Court.*—HON. WM. S. HERNDON, Judge.

AFFIRMED.

*Joel Funkhouser* for appellant.

(1) Both conveyances of which the plaintiff complains, being voluntary and made without consideration, are void as to creditors. R. S. 1889, sec. 5170; *Patton v. Bragg*, 113 Mo. 595; *Snyder v. Free*, 114 Mo. 360; *Sloan v. Torry*, 78 Mo. 623. (2) A wife having permitted her husband to hold himself out to the world as the owner of the land in question and thereby obtain business credit and standing, will not be permitted to claim the land as her own when the creditors of her husband sue him for their debt. *Riley v. Vaughan*, 116 Mo. 169; *Minnich v. Shaffer*, 34 N. E. Rep. (Ind.) 987; *Besson v. Eveland*, 26 N. J. Eq. 471; *Bank v. Hamilton*, 34 N. J. Eq. 162; *Humes v. Scruggs*, 94 U. S. 23; *Sexton v. Wheaton*, 8 Wheat. 229; *Wendell v. Van Rensselear*, 1 Johns. Ch. 353.

*Hiram Smith* and *Wm. Henry* for respondents.

(1) No one has a right as a creditor to bring a suit in equity to set aside for fraud a conveyance made by his debtor, until he has reduced his claim to a judgment; and, excepting where, from insolvency, an execution would be unavailing, all legal remedies must first be

exhausted by having execution issued, and a return of *nulla bona* before bringing the suit. *Mullin v. Hewitt,* 103 Mo. 650; *Humphreys v. Milling Co.*, 98 Mo. 548; *Thias v. Siener,* 103 Mo. 323; Bump on Fraudulent Conveyances [3 Ed.], 537. (2) All presumptions are in favor of the judgment of the trial court, and upon questions of fact. Even in equity cases, the appellate court will defer somewhat to the finding of the lower court (*Ryan v. Gilliam,* 75 Mo. 132); and when fraud is the fact in issue, it will not be presumed to exist, when all the facts as well consist with honesty and fair dealing as with an intention to defraud. *Rumbolds v. Parr,* 51 Mo. 592; *Dallam v. Renshaw,* 26 Mo. 533; *Ames v. Gilmore,* 59 Mo. 537; *Chapman v. McDuvalt,* 77 Mo. 44; *Henderson v. Henderson,* 55 Mo. 555. (3) At the time it is claimed plaintiff's equities accrued, the defendant, Caroline T. Wheeler, had the equitable title to the land in controversy, with the promise of the legal estate to which she was entitled, while plaintiff had no promise of any security or lien on the land; hence his equity, if equal to, could not rise above, that of said defendant; and she, having acquired the legal title, in the absence of superior equity, such title will not be disturbed in equity; for the maxim is, that where there is equal equity the law must prevail. Story's Equity Jurisprudence, sec. 64c; Snell's Principles in Equity, 23. (4) And it is not the policy of our law to favor the taking of the property of married women, who labor under disadvantages and disabilities, either directly through its use by the husband, or indirectly by his creating debts and thus inviting his creditors to take it as his to discharge his liabilities. R. S. 1889, sec. 6869; *Hart v. Leete,* 104 Mo. 315, and cases there cited. (5) The land in controversy into which the money and means of defendant Caroline T. Wheeler went, became and remained her separate property by

virtue of the terms of the statute, and the bare, naked legal title put in her husband was held by him in trust for her, and she had the right to have it vested in her, as she did, by the deeds sought to be set aside; and there is no rule of estoppel that can be applied justifying a court of equity to divest such title. *Scrutchfield v. Sauter*, 119 Mo. 623; *Blodgett v. Perry*, 97 Mo. 292. (6) There is a failure in the brief of appellant to distinctly and separately, or in any manner allege the errors committed by the inferior court as required by practice and the rules of this court. See rule 15.

MACFARLANE, J.—This is an action in the nature of a creditor's bill, the object of which is to reach certain real estate, the title of which was in defendant Caroline T. Wheeler, wife of defendant William H. Wheeler, and subject the same to the payment of a judgment in favor of plaintiff and against the said William H. Wheeler and others.

The evidence in brief disclosed these facts: Defendants, the said William H. and Caroline T. Wheeler, were married about the year 1884. The wife was then possessed of real and personal property. The husband owned nothing. About the twelfth of March, 1888, the said defendants sold a tract of land belonging to the wife, and with proceeds of the sale bought the land in controversy, the title to which, without the knowledge of either, and through mistake or inadvertence, was taken in the name of the husband. The fact that the title was so taken first came to the knowledge of the wife five or six months after the date of the deed. She at the time objected and insisted on a correction. There was at the time a deed of trust on the land, held by eastern capitalists, and it was agreed between the husband and wife that as soon as that was satisfied the correction should be made.

On August 20, 1890, one T. R. Sheldon, as princi-
pal, and Sarah E. Sheldon and defendant William H.
Wheeler, as sureties, executed and delivered to plain-
tiff a note for $317.50. Before taking the note plaintiff
was informed that defendant Wm. H. Wheeler was
the owner of this land, and was good for the amount
of the note, and upon this information he loaned the
money. Plaintiff demanded payment of said defend-
ant on the fourteenth day of February, 1893.

On the fifteenth or sixteenth of the same month,
in order to place the title to said land in the wife, she
and her husband executed a deed to defendant, Oliver
Adams, and, on the same day, Oliver Adams and wife
by proper deed conveyed the land to defendant Caro-
line T. Wheeler.

Plaintiff afterwards, in May, 1893, obtained a
judgment on said note, in the circuit court of Clinton
county, for $405.75 against all the makers of said note.
Upon this judgment execution was issued and returned
*nulla bona.*

This suit was then commenced to set aside the
conveyances from Wheeler and wife to Adams, and
from Adams and wife to said defendant Caroline T.
Wheeler, as obstructions to enforcement of the judg-
ment under execution. The court found for defendant
and dismissed plaintiff's petition, and he appealed.

I. This record shows no intended fraud on the
part of either William H. Wheeler or his wife, in trans-
ferring the title of the property from the former to the
latter. The evidence leaves no doubt whatever that
the property was paid for by money belonging to the
wife, and that the purchase was made by her husband
under her direction and for her benefit. It is equally
clear that she intended, when the purchase was made,
that the title should be vested in herself and not in her
husband. There is also doubt whether the husband

directed that the deed should be made to himself. However that may be, the property belonged in equity to the wife, and it was the duty of the husband to restore it to her. No consideration, other than the mere execution of the trust, was necessary. There was no more fraud on the face of this transaction than would be found in preferring the wife as a creditor to other of his creditors, which we have held that the husband had the undoubted right to do. *Hart v. Leete*, 104 Mo. 335; *Riley v. Vaughan*, 116 Mo. 176.

The statute on the subject of fraudulent conveyances only applies to the fraudulent transfer of the estate and interest of the debtor in the property, and has no application to a conveyance made solely for the purpose of transferring to the rightful owner property held in trust for him.

II. But it is said that, as plaintiff loaned the money on the faith of the credit the apparent ownership of the land gave the husband, the wife is now estopped to deny that the absolute title was in him. On this proposition plaintiff chiefly relies for a reversal.

The evidence does not show that, at any time, from the purchase of the land to the conveyance to the wife, the husband was engaged in any hazardous business, or indeed in any business transacted in whole or in part on a credit. The evidence only shows that during one year of that time he was engaged in partnership with Sheldon, the principal in the note, in keeping and breeding horses and jacks, but it does not appear that credit was at any time asked or given in that business, nor does it appear that the business itself was unprofitable. The wife had no information that her husband was in the habit of indorsing notes for others, nor did she know that he had been asked to sign this note as surety or that he had signed it until

long afterward. The question then is whether the wife, by permitting the husband to hold the title to her land, by recorded deed, in his own name, would, without other act or representation on her part, be estopped to deny the title as against plaintiff who, without her knowledge, gave credit to the husband upon the faith of his ownership as it appeared of record.

Equitable estoppel arises "where one by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position;" in such case "the former is concluded from averring against the latter a different state of things as existing at the same time." To make this estoppel complete, it is said, three things must combine, "namely, fraudulent representation, or withholding of truth when duty requires one to speak,—reliance on the expressed or implied representation by the party defrauded,—and the consequent act taken by the defrauded person." 2 Bishop on the Law of Married Women, sec. 487.

Again, it is said by another author: "It must appear that there was fraud or gross neglect; that the party making the admission, by his declaration or conduct, was apprised of the true state of his own title; and that others were acting in ignorance of it; that he intended to deceive or was culpably negligent in the nonassertion of his rights; that the other party had no knowledge, or means of acquiring knowledge, of the true state of the title, and that he relied upon such admission to his injury." 2 Herman on Estoppel and Res Judicata, sec. 987.

It must be conceded that Mrs. Wheeler by permitting the record title to the land to remain in her husband, represented to the public that her husband

was the owner of it. Yet in this alone no one could be defrauded. The fraud, and consequent estoppel, would only exist when she knew, or from all the circumstances ought to have known, that others, relying upon what she permitted the record to tell them, were dealing or might deal with the husband in such a manner as to cause them to alter their previous condition, to their injury. As a matter of fact Mrs. Wheeler did not know that her husband was being taken as surety on the faith of his ownership of the land. This transaction was, moreover, entirely out of the course of any business in which he was engaged, and no inference can, therefore, be drawn that she had such knowledge. We consequently do not think that the doctrine of estoppel applies under the circumstances of this case.

It is unnecessary to decide, nor do we decide, how far, under the statutes of 1889, the doctrine of estoppel can be applied to married women. Judgment affirmed. All concur in the result.