HARRIS GOLDBERG *vs.* ALBERT J. PARKER ET UX.

Third Judicial District, New Haven, January Term, 1913.

PRENTICE, THAYER, RORABACK, WHEELER and BENNETT, Js.

The surety upon an officer's receipt for property attached and the attaching plaintiff stand in the relation to one another of debtor and creditor, although the liability assumed by the former is contingent only.

A purchaser of real estate who permits another to take and hold the record title to it for years, and thereby enables him to represent himself as its owner, is estopped to deny the latter's title as against one who extended credit to him on the faith of his apparent and asserted ownership.

The enforcement of this rule does not depend upon the presence of fraud, but rests upon the inequity of clothing one with the apparent title and then denying that title to the prejudice of another who in good faith relied upon its reality and extended credit accordingly.

This rule of equitable estoppel is as applicable to a married woman who has placed the title to her real estate in her husband, who has thereby obtained a credit, as though she had put the title in the name of a third person.

The estoppel cannot be invoked, however, where the acts and repre-

Goldberg *v.* Parker.

sentations are not such as are naturally calculated to mislead, nor such as others have a right to rely upon.

A wife is presumed to know that by allowing the title to her land to stand for many years in her husband's name upon the land records, she was thereby giving constructive notice to all the world that her husband was the owner of that property.

The maintenance of the effectiveness of our registry system requires that one who relies in good faith upon a record title, apparently complete, shall be protected as against an equitable title which does not appear of record.

The case of *Clarke* v. *Black*, 78 Conn. 467, distinguished.

Argued January 21st—decided June 13th, 1913.

ACTION to foreclose a judgment-lien and to have certain transfers of the land upon which said lien rested set aside as fraudulent and void as against the plaintiff creditor, brought to and tried by the Court of Common Pleas in Fairfield County, *Scott, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *Error and cause remanded.*

Mrs. Parker purchased, on April 12th, 1890, a lot of land on Madison Avenue; on May 5th, 1891, a lot on Pacific Street; and on January 8th, 1892, a piece of land on Dewey Street; all in the city of Bridgeport. The title was taken in the name of her husband, the defendant, who in the first two purchases gave back a purchase money mortgage and note, and in the last assumed a mortgage thereon as part of the consideration. On June 27th, 1892, Mrs. Parker caused her husband to transfer the three pieces to one Wilson, in consideration of the transfer to him of another piece of property on Dewey Street and the assumption of a mortgage on this property of $1,500. On June 25th, 1900, Mrs. Parker caused her husband to give a note for $1,500, secured by mortgage on the Dewey Street property. In June, 1906, Mrs. Parker purchased a piece of land on North Avenue in Bridgeport, and took title in the name of her husband, who assumed a mortgage of $1,500 thereon, as

part consideration. All of these conveyances were duly recorded.

Mrs. Parker paid for these several pieces of property with her own funds, and always exercised control, ownership, and proprietorship over them. She never intended to give these to her husband, but placed them in his name "because of her peculiar ideas that a husband should always appear as the head of the house." Both Mr. and Mrs. Parker always regarded all of this property as belonging absolutely to Mrs. Parker.

In October, 1909, Mrs. Parker loaned her husband $1,000, and, with her knowledge and consent, he invested it in the Colonial Chemical Company, of which he was a stockholder. On February 7th, 1910, the plaintiff herein brought an action against this company, and attached certain property. The plaintiff's attorney and the officer making the attachment ascertained that Mr. Parker was the owner of record of the property on Dewey Street and North Avenue, and Mr. Parker having stated that he was the owner of this property they accepted him as surety upon said officer's receipt for the return of the property attached, upon the faith of his ownership of record. Neither the plaintiff, his attorney, nor the officer had knowledge of any claim of Mrs. Parker upon the property.

The plaintiff duly recovered judgment against the company, and execution upon the judgment was returned wholly unsatisfied. Thereafter the plaintiff recovered judgment against Mr. Parker on the receipt, and duly filed a judgment-lien upon the land on Dewey Street, and this action is brought to foreclose the lien.

In February, 1910, Mrs. Parker learned that this company was in financial troubles, and that her husband was interested in it. The failure of the company, and the loss of the $1,000, made her distrustful of her husband, and apprehensive that he might engage in the

future in some losing business enterprise and thereby jeopardize her real estate, and so she demanded of him its transfer to her.  Mr. Parker, on March 18th, 1910, through an intermediary, conveyed the property on Dewey Street and North Avenue to Mrs. Parker.

This was the consideration for the transfer, and not the payment of the $1,000 loan to Mr. Parker by Mrs. Parker.  Mrs. Parker, at the time of this transfer, did not know that her husband had signed the receipt, nor that he had creditors other than herself and these mortgagees, and in demanding and accepting the transfer she acted in good faith and without an intention to defraud.  In fact, at the time of the transfer to Mrs. Parker, Mr. Parker owed no debts except the $1,000, and had no visible property except said real estate; and the execution upon the judgment was returned wholly unsatisfied.

The property on Dewey Street is worth $1,000 above the incumbrance, and since the transfer Mrs. Parker has realized $1,500 above the incumbrance upon the North Avenue property.

*Frank L. Wilder,* for the appellant (plaintiff).

*John P. Gray,* for the appellees (defendants).

WHEELER, J.  For over twenty years Mrs. Parker permitted her real estate in Bridgeport to stand of record in her husband's name; mortgages thereon to be assumed by him, or made as part of the purchase price; and conveyances thereof to be made, and mortgages to be placed thereon, by him.  As to all the world the public land records proclaimed him the owner.  The plaintiff accepted him as a surety upon an officer's receipt, given in place of an attachment secured by the plaintiff upon certain property, in reliance upon his

ownership of this property as disclosed by the public records and as stated by him. In fact, his wife was the owner of this property; and the question at issue is whether the transfer to her of this property, made subsequent to the contingent liability incurred by her husband as a surety, and accepted by the plaintiff in reliance upon his ownership, as disclosed by the public records and declared by him, is superior to the plaintiff's right in the property.

The plaintiff claims that Mrs. Parker is estopped from setting up her claim of ownership ahead of his claim against the surety, which he has reduced to judgment, and that, as against him, the transfers to her were in law constructively fraudulent. The foundation of this claim must rest upon the assertion that the plaintiff was, at the inception of the suretyship, a creditor of Mr. Parker. The liability of Mr. Parker as a surety was contingent, though the receipt was absolute in terms. *Fowler* v. *Bishop*, 31 Conn. 560, 562. The relation of debtor and creditor between Mr. Parker and the plaintiff arose at the moment he became a surety. This liability was in law as assured as though the plaintiff had then sold Mr. Parker a bill of goods, or loaned him a sum of money. Debt, in the sense in which it must here be regarded, denotes "any kind of a just demand." We have held that one who holds an unliquidated claim against another is his creditor under the foreign attachment statute. *New Haven Saw-Mill Co.* v. *Fowler*, 28 Conn. 103, 108. So far as we are aware, the authorities generally hold the person for the payment of whose debt another has become contingently liable, to be a creditor. Thus in *Thompson* v. *Thompson*, 19 Me. 244, 251, where a bond with surety was given by a guardian to secure the ward against official neglect or misconduct, it was held that the relation of debtor and creditor arose at the time of the

signing of the bond, and that the obligee, or those whom the bond was designed to protect, might impeach any conveyance made after its date, though prior to any breach of the bond. So it was held that the holder of a promissory note was a creditor of the indorser or guarantor thereon, notwithstanding the liability of an indorser or guarantor was contingent, within the provisions of the statute avoiding all gifts made to defraud creditors. *Crocker* v. *Huntzicker,* 113 Wis. 181, 88 N. W. 232. So it was held a landlord was an existing creditor of his tenant as to rent to become due under the lease, and therefore a voluntary conveyance by the tenant might be set aside, and the property so conveyed subjected to the landlord's claim for rent falling due after the conveyance. *O'Brien* v. *Whigam,* 41 N. Y. Supp. 40. In *Hanna* v. *Hurley,* 162 Mich. 601, 604, 127 N. W. 710, it was held that an obligee on a bond given for costs might have set aside a conveyance of stock, contrary to the bulk-sales act, though the liability of a surety was contingent at the time of sale. The court said: "It is urged by appellant that George D. Hanna's liability upon the bond could not be fixed until judgment upon appeal, and therefore that the obligee in the bond was not, at the time of the sale, one of his creditors. . . . It cannot be said that George D. Hanna's liability was not fixed at the moment he signed the bond. It was fixed in amount, though contingent upon the failure of his principal to prosecute his appeal, and reverse or pay the judgment."

Most of the cases where the question of contingent liability arose, are those between a surety and the principal obligees upon a bond or other instrument; or between an indorser or guarantor and maker, where the one contingently liable for the debt of another has paid it, and is seeking to recover of the principal of the bond or other instrument, or the maker or guarantor of the

note or other instrument.  Our investigation satisfies us that the law is well settled that the liability begins when the engagement of the surety, indorser, or guarantor begins.  *Washington* v. *Norwood*, 128 Ala. 383, 389, 30 So. 405; *Hatfield* v. *Merod*, 82 Ill. 113; *Dudley* v. *Buckley*, 68 W. Va. 631, 70 S. E. 376; *Graeber* v. *Sides*, 151 N. Car. 596, 66 S. E. 600; *Whitehouse* v. *Bolster*, 95 Me. 458, 460, 50 Atl. 240; *Fortune* v. *Cassidy*, 140 Ill. App. 580; *McLaughlin* v. *Bank of Potomac*, 48 U. S. (7 How.) 220; *Van Wyck* v. *Seward*, 18 Wend. (N. Y.) 375.  The obligation of Mr. Parker as surety attached when he signed the receipt; the relation of debtor and creditor, between the surety and the plaintiff, arose at that time.

We are now to inquire whether the plaintiff creditor can cause to be set aside a conveyance by his debtor to the debtor's wife of real estate, of which the real ownership was in the wife, but the legal title to which had been placed in the husband, and so appeared of record for many years, and in reliance upon the record title and the declaration of ownership by the husband, the plaintiff had extended to him credit.  The defendant wife was without intent to wrong the plaintiff, and without knowledge that her husband owed the plaintiff or any one else.  The plaintiff was equally innocent. Unless he can compel the appropriation of this property to the payment of his debt he must lose it.

Mrs. Parker put it in the power of her husband to secure this credit on the faith of his ownership of her property.  She caused the land records to declare that he owned this property.  The plaintiff had the right to rely upon the title as it appeared of record.  The act of the real owner in placing the record title of property in the name of another precludes her from denying his title as against one who has extended a credit in reliance upon the title which she has vested in the other.  The

right of the creditor arises from the act of the owner, and does not depend upon the actual title but upon the apparent title. The true owner is barred from asserting her title against the creditor by her own act. It would be inequitable to permit the assertion of her right to the injury of the innocent creditor. She is estopped from maintaining her ownership, otherwise injustice would. be done the creditor. Between the innocent owner and the innocent creditor, the owner, whose act led to the wrong to the creditor, must suffer the loss.

The rule of equitable estoppel is as applicable to a married woman who has placed the title to her real estate in her husband, who has thereby obtained a credit, as though she had put the title in the name of a third party. *Galbraith* v. *Lunsford*, 87 Tenn. 89, 97, 9 S. W. 365; 2 Pomeroy on Eq. Jurisp. (3d Ed.) § 814. The authorities so holding are numerous. "With the knowledge and assent of Mrs. Hauk, the title to this property stood of record, from November 9th, 1889, until January 13th, 1891, in the name of her husband. During this period he purchased from the complainants the goods for which their judgment was obtained. Upon the strength of his apparent ownership of such property he obtained credit; and it is neither just nor equitable that she should now, as against them, be permitted to assert that this property all the while belonged to her." *Hauk* v. *VanIngen*, 97 Ill. App. 642, 650, affirmed 196 Ill. 20, 63 N. E. 705; *Smith* v. *Willard*, 174 Ill. 538, 51 N. E. 835; *Mertens* v. *Schlemme*, 68 N. J. Eq. 544, 550, 59 Atl. 808; *Warner* v. *Watson*, 35 Fla. 402, 421, 17 So. 654; *Lawrence* v. *Guaranty Investment Co.*, 51 Kan. 222, 32 Pac. 816; *McCormick Harvesting Machine Co.* v. *Perkins*, 135 Iowa 64, 68, 110 N. W. 15; 16 Cyc. 773, 775; 20 id. 606; 2 Beach on Eq. Jurisp. § 1103; note to 30 L. R. A. (N. S.) 3.

The enforcement of this rule does not depend upon

whether there was actual fraud, although this element is often present, but upon the inequity of the wife holding out to the world her husband's ownership, and then denying it, to the prejudice of one who has extended credit upon the faith of her act. Of a reply purporting to set up an equitable estoppel, we said: "It is claimed that these averments were not sufficient, because no bad faith, wilful wrong, or gross carelessness is charged. No such charges were necessary. . . . It is not his intent, so much as the result of his conduct, which determines his liability." *Canfield* v. *Gregory*, 66 Conn. 9, 16, 33 Atl. 536; *Galbraith* v. *Lunsford*, 87 Tenn. 89, 9 S. W. 365; 2 Pomeroy on Eq. Jurisp. (3d Ed.) §§ 803, 804, 814.

There are authorities which hold the wife's fraud the determinative element in the proof of her equitable estoppel, as, for instance, those of Texas and Missouri; but the great weight of authority is against this position and in accord with the doctrine we adopted in *Canfield* v. *Gregory*. Unless the circumstances be such as naturally to mislead another, one of the indispensable elements of an equitable estoppel is absent. In an early case we thus stated the doctrine: "Therefore, it has been holden, that if the owner of goods voluntarily permit another to hold himself out to the world as being the true owner, and for this purpose, entrust him with the exclusive possession or other *indicia* of title, under circumstances which would naturally tend to mislead, he shall be concluded by the sale of it to an innocent or mistaken purchaser." *Baldwin* v. *Potter*, 12 Conn. 473, 482. In *Canfield* v. *Gregory*, 66 Conn. 9, 17, 33 Atl. 536, we said: "It is true that it does not extend to acts or representations not naturally calculated to mislead, and on which others had no right to rely." *Pickard* v. *Sears*, 6 Adol. & El. 469; *Laing* v. *Evans*, 64 Neb. 454, 459, 90 N. W. 246.

Were the circumstances naturally calculated to mislead the plaintiff into the belief that Mr. Parker was the

owner, and did he have the right to rely upon this belief?

Mr. Parker was financially interested in the Chemical Company; he represented that he owned this property; the plaintiff looked up the public records, and ascertained that by them, for years, he had been the owner, and that he had, for over twenty years, owned property of record in Bridgeport, assumed mortgages upon purchases, and given mortgages upon purchases. The titles were such that the most conservative investor or institution would have accepted them and loaned upon their faith. These circumstances were naturally calculated to mislead the plaintiff as they did. The plaintiff did rely upon these titles of record, released his attachment against the Chemical Company, and in its stead accepted an officer's receipt with Mr. Parker as surety. It would be difficult to conceive of a stronger case of equitable estoppel. Any other holding would do violence to the faith which, time out of mind, we have given to our registry laws. With inflexible adherence we have made every title to land, so far as practicable, appear of record. We have held the record constructive notice to all the world of land titles. We have authorized reliance to be placed thereon. We have sustained contracts and conveyances made upon their faith. We cannot hold that a credit, extended in reliance upon the land records, must yield to the equitable owner of the title without doing irreparable injury to the registry laws and going counter to our decisions.

The maintenance of our system of registry of titles is of the greatest public importance, and he who acts in reliance upon the record has behind him not only the natural equities of his position, but also the especial equity arising from the protection afforded every one who trusts the record. *Rosenbluth* v. *DeForest & Hotchkiss Co.,* 85 Conn. 40, 47, 81 Atl. 955; *Beach* v. *Osborne,*

74 Conn. 405, 411, 50 Atl. 1019, 1118; *Ives* v. *Stone*, 51 Conn. 446, 456; *Wheeler* v. *Young*, 76 Conn. 44, 50, 55 Atl. 670.

The test is whether the act of the wife was naturally calculated to cause the plaintiff to extend credit to her husband. It is not, as has sometimes been suggested, whether the wife had reason to expect credit would be extended to her husband. If, however, this were the test, the facts found make it perfectly clear that she did have such reason to expect. Her purpose in placing the property in his name was "because of her peculiar ideas that a husband should always appear as the head of the house." This has but one meaning; she purposed giving him standing and financial responsibility in the community. The purpose was identical with that in *Kennedy* v. *Lee*, 72 Ga. 39, because the wife "thought it would look better" for him to hold the title to her real estate.

She is by law presumed to know that the titles of record, through all these years, would be constructive notice to all the world that her husband was their owner. She gave him, by her act, credit to either assume mortgages upon each of the several properties she permitted him to own, or to give mortgages thereon as part consideration for the purchase price, or to make mortgages thereon after the purchase. His title of record gave him a credit by which he procured a mortgage on the very property on Dewey Street upon which the plaintiff is seeking to foreclose his lien. She loaned him $1,000, which he had, to her knowledge, lost in the company whose credit he was protecting by becoming its surety. Under these circumstances it could not be said that she could not reasonably anticipate that he might use the credit she had given him. The mere fact that she had never known that he had had any other creditors, and he, in fact, had had none, is of no consequence, and

very far from a finding that she could not reasonably anticipate that he would use the credit given him by his apparent ownership.

The trial court relied for its decision upon the case of *Clarke* v. *Black*, 78 Conn. 467, 62 Atl. 757. There is a marked difference between that case and this. There the relation of debtor and creditor existed between the husband and wife, and was the consideration of the conveyance; in this case it is expressly found that this relation formed no part of the consideration of the transfer. In that case it did not appear that the creditor seeking to set aside the conveyance relied upon the husband's ownership, or upon his title of record, in extending him credit. And, further, the question of the wife's estoppel does not appear to have been raised. This case is governed by the principles involved in *Sanford* v. *DeForest*, 85 Conn. 694, 84 Atl. 111.

There is error, the judgment of the Court of Common Pleas is reversed, and the cause remanded with instruction to render judgment for the plaintiff in accordance with this opinion.

In this opinion PRENTICE, C. J., and BENNETT, J., concurred.

RORABACK, J. (dissenting). This is an action to foreclose a judgment-lien upon real estate to which Mrs. Parker, one of the defendants, holds title, and to set aside a transfer of the property upon the ground that her title was acquired by her without consideration, in fraud of her husband's creditors, and to prevent the plaintiff from collecting his judgment.

The trial court has distinctly found that her title was not so acquired, and this finding is conclusive unless the subordinate facts show that this conclusion was incorrect.

The principles of some of our decisions applicable

to the present case are to be found in the following cases: This court, in the case of *Knower* v. *Cadden Clothing Co.*, 57 Conn. 202, 221, 17 Atl. 580, said: "In all cases where the title of a vendee has been attacked because of the intent on the part of the vendor to defraud his creditors by the transfer," it should appear "that the vendee had actual knowledge of and participated in the fraud; that is, that he had an intent to commit a fraud; this to be proven as a fact." This principle was recognized in *Trumbull* v. *Hewitt*, 62 Conn. 448, 451, 26 Atl. 350. To the same effect, though more directly applicable to the present case, is the case of *Clarke* v. *Black*, 78 Conn. 467, 62 Atl. 757, where it appears that "the defendant, in 1886, let his wife have $3,500 to assist her in purchasing and keeping a boarding-house, upon an informal understanding that when she acquired by such means a sufficient sum to build a house, it should be turned over to the defendant as his property, and that the proceeds of the business not needed for this purpose should belong to her. At the end of ten years, with the avails of her business, she bought land and built a house thereon at the expense of $6,000, and told the defendant she would convey the property to him, which she did three years later. This conveyance was made in good faith and with no intent to defraud any one, although it left her without sufficient attachable property to satisfy the claim of her sole creditor." This court held "that upon these facts the relation of debtor and creditor existed between the wife and her husband, and that such relation constituted, as matter of law, a valuable consideration for her conveyance which prevented it from being treated as constructively fraudulent."

Other cases in this connection proceed upon the same theory. Thus, in *Warner Glove Co.* v. *Jennings*, 58 Conn. 74, 82, 19 Atl. 239, it is stated: "A debtor on the

eve of insolvency may prefer one or more of his creditors by payment of their claims, either in money or by the transfer to them of property, if such payment is made in good faith. In the absence of proceedings under the insolvent law, neither the knowledge of the creditor of his debtor's insolvency, nor the fact that such acts are calculated to place the property of the debtor beyond the reach of his creditors and hinder them in the collection of their claims, will of themselves render such bona fide transactions void or fraudulent in law." See also *State* v. *Martin*, 77 Conn. 142, 144, 58 Atl. 745.

It does not appear that Parker was indebted, when this conveyance was made, to any one other than the plaintiff. When this transfer was made to the wife she had no knowledge that her husband had signed the receipt, and did not know that he was indebted to any one. The land in question was purchased with money belonging to Mrs. Parker. She never intended to give her husband either the money or the land; from motives that were not fraudulent she allowed the record title of the land to stand in her husband's name, but both of them regarded and treated it as belonging to the wife. The conveyance was of property which in reality belonged to her, and which, in justice and equity, it was his duty to convey to her upon request.

The plaintiff, when the transfer of the land in question was made, was not a purchaser within the recording Acts. The liability of Parker was not absolute, but dependent upon an uncertain event. It was small in amount, the only one in existence, and was unknown to Mrs. Parker. There is nothing to show that the wife was implicated in a fraud. She did not have any good reason to know that Parker was using her property to obtain credit, nor did she connive with him to that end. While it appears that there was a good consideration

for the conveyance to Mrs. Parker from her husband, yet, if that were not so, the entire indebtedness of the husband at the time of the conveyance was the contingent and insignificant amount of $87. It does not appear that the husband was at the time either insolvent or in embarrassed circumstances, but it does appear that he was equitably bound to make the conveyance to his wife. Under such conditions the law would not say that the conveyance was void as to creditors, even if it were a voluntary one. *Salmon* v. *Bennett*, 1 Conn. 525, 542, 543.

These considerations are a sufficient answer to the claim, urged by the plaintiff, that the defendant Mrs. Parker is estopped from asserting that she is the owner of the property in question by reason of its transfer to her by Mr. Parker. But the appellant insists that Mrs. Parker allowed her husband to secure this credit on the faith of his ownership of her property; that she caused the land records to declare that he owned this property; that the plaintiff had the right to rely upon the title as it appeared of record; and that the act of the wife in placing the record title of property in the name of her husband, precludes her from denying his title as against one who has extended a credit in reliance upon the title which she vested in him.

In this State we have held to the rule that in transactions concerning real estate, parties may rely upon the title to such property as disclosed by the land records, in so far at least as the title may be affected by anything required to be recorded. We are here, however, not concerned with a transaction touching real estate, but with a quite different matter affecting the extension of personal credit without security.

It is obvious from the manner in which estoppel may be established, that there can be no fixed and settled rules of universal application to regulate it. Whether

acts or admissions shall operate by way of estoppel *in pais* must depend upon the circumstances of the case. Our own cases proceed upon this idea. In *Canfield* v. *Gregory*, 66 Conn. 9, 17, 33 Atl. 536, it is stated that "the modern estoppel *in pais* is of equitable origin, though of equal application in courts of law. It is much more than a rule of evidence. It establishes rights; it determines remedies. An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is not to support some strict rule of law, but to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties." In *West Winsted S. B. & B. Asso.* v. *Ford*, 27 Conn. 282, 290, this court declared: "Estoppels *in pais* are founded in the obligation which every man is under to speak and act according to the truth of the case, and in the policy of the law to prevent the great mischiefs resulting from uncertainty, confusion and want of confidence in the intercourse of men, if they were permitted to deny that which they have deliberately and solemnly asserted and received as true. But the mere acts, statements, or admissions of a party when not performed or made under seal or of record, or in some of those acts to which peculiar authority is attached by law, were not at common law considered as estoppels, and had no other weight than that of evidence, more or less important, but which might be explained or rebutted. By the recent decisions of the courts in this country and in England, a much wider scope is given to the doctrine of estoppel *in pais*, and it is now held and established, that wherever an act is done or a statement made by a party which cannot be contravened or contradicted without fraud, or gross misconduct which is akin to it, on his part, and injury to others whose conduct has been in-

fluenced by the act or omission, or, as was said in *Middletown Bank* v. *Jerome,* 18 Conn. 449, where a person by his acts or words intentionally induces another to believe in the truth of a fact and thereby change his situation or commit his interests, the character of an estoppel will attach to what would otherwise be a mere matter of evidence, and will become binding upon a party and decisive with a jury even in opposition to proof of a contrary nature." *Whitaker* v. *Williams,* 20 Conn. 98, 103; *Giddings* v. *Emerson,* 24 Conn. 538, 547; *Taylor* v. *Ely,* 25 Conn. 250, 259; *Danforth* v. *Adams,* 29 Conn. 107, 111.

In *Bennet* v. *Strait,* 63 Iowa, 620, 621, 19 N. W. 806, it was held that a wife would not be estopped from asserting equitable title to her land as against creditors of her husband, merely because title was taken in the name of the husband, and while thus held the debts were contracted. The court said that "the law of estoppel has no application from the mere fact of the husband's holding the title when the debt was contracted." Money loaned on the faith of the apparent ownership of the land of the wife, held in the husband's name, will not prevent the wife from asserting title as against the creditor, where she did not know that her husband was engaged in any hazardous business, or in any business transacted in whole or in part on credit, since the wife, by permitting the husband to hold the title to her land, by recorded deed, in his own name, will not, without other act or representation on her part, be estopped to deny the title as against a creditor who, without her knowledge, gave credit to the husband upon the faith of his ownership as it appeared of record. *DeBerry* v. *Wheeler,* 128 Mo. 84, 89, 90, 30 S. W. 338, 49 Amer. St. Rep. 538. The court in that case said it must be conceded that the wife, by permitting the record title to the land to remain in her hus-

band's name, represented to the public that her husband was the owner of it. "Yet in this alone no one could be defrauded. The fraud, and consequent estoppel, would only exist when she knew, or from all the circumstances ought to have known, that others, relying upon what she permitted the record to tell them, were dealing or might deal with the husband in such a manner as to cause them to alter their previous condition."

The case of *Marston* v. *Dresden*, 85 Wis. 530, 55 N. W. 896, touches upon the question before us. It appears that a wife entrusted her separate property to her husband to invest and manage in his own name, he to transfer it to her when she so desired. While it stood in his name he entered into business, and bought merchandise of persons who knew from the records that the property was in his name, and who relied upon his apparent ownership of it in giving him credit. It was conveyed by the husband to the wife while he was still solvent. In the opinion the court said that it not having been put in the husband's name for the purpose of giving him credit, and no representations having been made, and the wife not having known that credit was given him on the faith of such apparent title, she was not estopped to claim it as her own. See also *Bicocchi* v. *Casey-Swasey Co.*, 91 Tex. 259, 42 S. W. 963; *Blake* v. *Meadows*, 225 Mo. 1, 123 S. W. 868, 30 L. R. A. (N. S.) 1, 18.

In *Romeo* v. *Martucci*, 72 Conn. 504, 509, 45 Atl. 1, 99, this court said: "There is no question of fraud on the part of the owner; the good faith of his conduct is neither directly or indirectly impugned. The sole claim is that he has 'voluntarily permitted another to hold himself out to the world as being the true owner, and for this purpose entrusted him with the exclusive possession or other *indicia* of title, under circumstances

which would naturally tend to mislead.' The cases where the real owner has been estopped by having clothed the possessor with *indicia* of title for such purposes and under such circumstances, are many; but 'all these cases proceed upon the ground that the owner has deliberately assumed a false position, and a character inconsistent with that of owner, which, if changed, would result in fraud and damage.'" See also *Tracy* v. *Lincoln,* 145 Mass. 357, 14 N. E. 122; *Stiff* v. *Ashton,* 155 Mass. 130, 29 N. E. 203; *Lincoln* v. *Gay,* 164 Mass. 537, 540, 42 N. E. 95.

When Parker signed the officer's receipt in February, 1910 (which was the basis of this action), there was nothing upon the land records of the town of Bridgeport to show that this constituted any incumbrance upon Mrs. Parker's land. No lien whatever upon this property could occur in consequence of Parker's contingent liability upon the officer's receipt without the concurrence of a number of uncertain events, to wit, a judgment against the Colonial Chemical Company, its failure and inability to pay the same, an action and judgment against Parker, and the filing of a judgment-lien upon Mrs. Parker's property, which was not done until January, 1912. The record discloses that Mrs. Parker had obtained a conveyance of her property which was recorded in March, 1910, nearly two years before the plaintiff's lien appeared on record.

It is the purpose of our system of registry that the apparent owner of record shall be considered as the true owner (so far as subsequent purchasers without notice to the contrary are concerned), notwithstanding any unrecorded previous liens or alienations. From the natural equity of Mrs. Parker, and also from the special equity arising from the protections afforded by the prior record of her title, it is manifest that the

plaintiff should not receive any aid or support from our system and policy relating to the registry of title to real estate. He who avers an estoppel, either by pleading or evidence, must establish by proofs, positive or circumstantial, every fact that essentially enters into the character of such a claim. It is to be considered that the doctrine of estoppel is an exception to the general rule for the prevention of fraud, and is not to be extended beyond the reasons on which it is founded. 1 Greenleaf on Evidence (Ed. 1899) § 204; *Commonwealth* v. *Moltz*, 10 Pa. St. 527, 51 Amer. Dec. 499, 504.

Instead of there being an affirmative finding in favor of the appellant upon the question of knowledge and the negligence of Mrs. Parker in allowing the title to her property to stand in her husband's name, the record shows to the contrary. She did not allow her property to stand in her husband's name that he might thereby obtain credit. It appears that she had no good reason to suspect that, by allowing the title to her property to stand in her husband's name, it would be used as the basis of a credit, or that money would be borrowed or an obligation taken upon the faith of it.

Mr. Parker had never engaged in any business undertaking or commercial enterprise which required credit. For nearly twenty years the wife had always had the absolute control of the property herself, and she had, upon all occasions, let her business acquaintances know of it. The record does not disclose that Mrs. Parker had any knowledge, directly or indirectly, concerning the attitude which Goldberg had taken toward her property. Neither does it appear that there was any duty on her part to make inquiry in this direction. Under these circumstances, to hold that what was done by Mrs. Parker amounted to fraud or culpable

negligence, would be a misapplication of the principles on which estoppel *in pais* is based.

In my opinion the trial court did not err in rendering judgment for the defendants.

In this opinion THAYER, J., concurred.