No. 29,168.

THE KINSLEY BANK, *Appellant*, v. IDA E. ADERHOLD, *Appellee*.

(285 Pac. 597.)

Opinion filed March 8, 1930.

*A. L. Moffat*, of Kinsley, for the appellant.

*John A. Etling*, of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff bank brought this action against defendant to set aside conveyances to two eighty-acre tracts of land on the ground that the title thereto had been vested in defendant to hinder and delay plaintiff in the enforcement of its rights against defendant's husband, who was a judgment debtor of the bank.

Plaintiff's petition alleged the pertinent facts; that on September

7, 1928, it recovered a judgment against A. F. Aderhold for $8,-643.67; that $800 had been paid thereon; that an execution against the property of the judgment debtor had been returned unsatisfied; that on July 30, 1928, A. F. Aderhold had transferred and conveyed to the defendant, Ida E. Aderhold, his wife, eighty acres of land, and on December 14, 1927, Aderhold had contracted to purchase another tract of eighty acres and paid $1,000 thereon and caused the land to be conveyed directly to defendant, and that the purpose of both these transfers of realty was to hinder, delay and defraud the plaintiff.

Defendant answered with a general denial and alleged that prior to 1912 she had intrusted to her husband the handling of $3,500 of her own money, and that on November 4, 1912, he purchased one of the eighties for her with part of her money and took title thereto in his own name without her consent. She further alleged that on December 14, 1927, her husband, A. F. Aderhold, purchased with her funds the second eighty acres involved in this action for her and that she had given a mortgage thereon for $2,260 to raise funds to pay the balance of the purchase price, and that the mortgagee had transferred the mortgage to this plaintiff, and that it had accepted from her the accrued interest on said mortgage, $135, whereby plaintiff was estopped to question or deny that she was the *bona fide* owner of the legal and equitable title to that property.

On this joinder of issues the cause was tried by the court. It was shown that as long ago as 1909 the defendant received $3,500 from the sale of a tract of land belonging to her, and that she intrusted that sum to her husband, A. F. Aderhold, to invest for her benefit as he should see fit. In 1912, with part of this money, he purchased the first tract of land in dispute (E½, NW¼, 26-23S-20W), and took title thereto in his own name. She did not learn of that fact for some years. He paid the taxes and collected the rents, sometimes giving her all of the rent. Sometime in 1927 she requested him to convey the tract to her, and in July, 1928, he did so.

In December, 1927, A. F. Aderhold negotiated for the purchase of another eighty-acre tract (S½, SW¼, 32-24S-19W), and made a payment of $1,000 thereon, and caused the property to be conveyed to defendant, Mrs. Aderhold. In 1924, and for many years prior thereto, A. F. Aderhold had followed the career of a public officer or quasi public officer, as county clerk, county treasurer, bank cashier and postmaster, and was not engaged in business where

people dealing with him would need to concern themselves with his credit rating. In 1924 a son of A. F. Aderhold embarked in business as a dealer in automobiles, and sought and obtained credit in substantial sums from the plaintiff bank. This credit, which ranged from $5,000 to $11,000 continuously from April, 1924, to August, 1928, was evidenced by promissory notes given by the son and renewed from time to time, and the father, A. F. Aderhold, signed the notes with the son as joint maker and surety. In 1928 the son became a bankrupt, and the bank recovered judgment against the father, A. F. Aderhold, for $8,621.57 on certain of the notes signed by father and son. A small dividend from the bankrupt's estate was applied on this judgment and the father turned over to the bank a certain property worth $800, which reduced that judgment to that extent. Execution issued on the judgment in favor of the bank against the property of A. F. Aderhold was returned unsatisfied. Two of the findings read:

"9. It was the general reputation in the community, at all times from 1924 to July, 1928, that A. F. Aderhold was the owner of the E½ of the NE¼ of section 26, township 23, range 20, and the plaintiff bank relied upon such general reputation in extending credit to A. F. Aderhold. In the year 1927 the plaintiff bank made an examination of the record title of the land above described and partly relied upon such record in extending credit to A. F. Aderhold thereafter. At the time of this examination of the record, the indebtedness of A. F. Aderhold to the bank was approximately as large as it was at any time from 1924 to July, 1928.

"10. At the time A. F. Aderhold executed the deed to Ida E. Aderhold conveying the real property above described, and at all times during the year 1927, he did not have sufficient assets to pay the amount of the notes upon which he was liable to the plaintiff bank."

On these findings the trial court reached this conclusion of law:

"The court concludes, as a matter of law, that the defendant, Ida E. Aderhold, has no right, title or interest to the S½ of the SW¼ of section 32, township 24, range 19, in Edwards county, Kansas, and that the same is the property of A. F. Aderhold, and should be sold as provided by law to satisfy the judgment of the plaintiff bank against the said A. F. Aderhold. That Ida E. Aderhold is the owner of the E½ of the NE¼ of section 26, township 23, range 20, in Edwards county, Kansas, and that the plaintiff bank has no lien thereon; and that the costs of this action should be divided equally between the parties hereto."

Both parties appeal. Plaintiff contends that under the trial court's findings of fact defendant was estopped to claim title to eighty acres decreed to be her property. Defendant's counter con-

tention is that the court erred in decreeing that the second eighty-acre tract standing in her name was her husband's property and subject to execution for the satisfaction of his debts.

Touching the first of these appeals, the plaintiff argues that the defendant is estopped to claim title to the first eighty acres because for many years she was quite indifferent as to how he invested her money. While she did not know in 1912 he had bought that land with her money or that he had taken title thereto in his own name, yet he recorded his title that year and she did learn of the fact within a few years and was content to leave the title in his name until about a year before his financial troubles began to overwhelm him. Then she did ask him to transfer the title to her, but did not insist on it, and he did not transfer it until four days before the bank brought suit against him which speedily culminated in a default judgment for $8,621.57. It was a matter of general repute in the community that A. F. Aderhold, defendant's husband, was the owner of the property as well as the record title holder. In 1927 the bank consulted the county records and thereby learned that the title to the land stood in the name of A. F. Aderhold. Partly on his reputed ownership and partly upon the record title the bank extended credit to A. F. Aderhold.

The foregoing facts standing by themselves would go a long way towards making out a case of estoppel against the wife, but other facts must not be overlooked. Since there is no dispute about the fact that Mrs. Aderhold had intrusted $3,500 of her own money to her husband to handle as he saw fit, it cannot operate to her prejudice that she did not hold him to a strict and regular accountability therefor (*Bank v. Haid*, 97 Kan. 297, 301, 155 Pac. 57; *Markham v. Waterman*, 105 Kan. 198, 182 Pac. 546), except in so far as third parties may have thereby been misled or prejudiced by her attitude. (*Jacquart v. Jennings*, 118 Kan. 224, 235 Pac. 101.) But while the bank extended credit between 1924 and 1928 partly in reliance on the general reputation in the community that A. F. Aderhold owned the eighty acres, there is no evidence that Mrs. Aderhold knew that her husband was borrowing money from the bank. So far as her knowledge is concerned, he was not embarked in any business in which he would need credit. He had been an officer and salaried man, not a business man,

practically all of his mature life. Indeed, while A. F. Aderhold signed the notes as joint maker with his son, and eventually became liable as such, the credit was arranged for the son's benefit and not for the benefit of A. F. Aderhold. And while the bank consulted the county records in 1927 and there learned that the title to the eighty acres stood in his name, and the bank thereafter partly relied on that fact in extending credit to Aderhold, yet the finding of the court quoted above is that Aderhold's indebtedness was approximately as large at the time it consulted the record as it was at any time between 1924 and 1928. Indeed, another finding of the court, too long for incorporation here, shows that at various times before the bank consulted the record it was carrying Aderhold for larger sums, thus: On August 20, 1925, the credit extended was $11,350; on August 20, 1926, it was $11,000. On July 29, 1927, about the time the bank consulted the record, the credit extended was $9,350; and it never thereafter rose to the latter figure, but oscillated between $7,425 and $9,300 until the action to reduce Aderhold's indebtedness to judgment was begun, August 3, 1928.

Did this situation of affairs create an estoppel against Mrs. Aderhold?

In *Carithers v. Weaver*, 7 Kan. 110, 125, it was said:

"Estoppels *in pais* are upheld to prevent gross injustice in cases where one party, having rights in property, by representations or conduct in reference thereto, fraudulently induces another to part with value for that property, and thereafter insists on those rights to deprive the latter of both value and property."

In *Chellis v. Coble*, 37 Kan. 558, 15 Pac. 505, it was said:

"In order to constitute an equitable estoppel with reference to the title of property, it must appear that the party to be estopped has made admissions or declarations, or .done acts with the intention of deceiving the other party with regard to the title, or with such carelessness or culpable negligence as to amount to a constructive fraud, and that at the time of making the admissions or declarations, or of doing the acts, he was apprised of the true state of his title, and that the other party was not only destitute of all knowledge of the true state of the title, but also of all convenient or ready means of acquiring such knowledge." (Syl. ¶ 5.)

In *McAdow v. Hassard*, 58 Kan. 171, 48 Pac. 846, it was said:

"A wife is not estopped as against her husband's creditors to claim a return of property belonging to her, which the husband had been using as his own but which had been intrusted to him for the wife's use, where it does not appear that credit had been extended to the husband upon the strength of his

apparent ownership of such property and that the wife knew or ought to have known that such extension or credit was made upon the strength of such appearance." (Syl. ¶ 3.)

In *Ergenbright v. Henderson,* 72 Kan. 29, 82 Pac. 524, it was said:

"A party pleading an estoppel *in pais* must show: (1) That the opposing party has made some representation inconsistent with his present position, with the intent to mislead the pleader; (2) that the representation so made was known by the maker to be false; (3) that the pleader did not know that the representation was false; (4) that he believed it to be true, and acted upon such belief." (Syl. ¶ 1.)

In the analogous case of *McAdow v. Hassard,* supra, this court said:

"It is said that the evidence discloses that, down to the time of the purchase of the land in suit, Mrs. Mather, as she then was, allowed her husband to keep all the visible property either of them had in his own name, and to do business upon it as though it were his own; and that the law will not now allow her to assume the role of a creditor of his, to the disadvantage of those who trusted him upon the strength of such property being his. If it had been shown that the money which finally found its way into the land in question had been turned over to the husband to use as though it were his own, instead of being money which had been intrusted to him for the specific purpose of buying the land; and if it had also been shown that the wife knew, or ought to have known, of the extension of credit to the husband upon the strength of such false appearance, and had it also been shown that plaintiff relied upon such appearance and extended the credit in question because thereof, the claim would be well founded; but none of these circumstances was shown, and without a showing of the same no estoppel arises." (p. 174.)

In the instant case the wife's $3,500 had been turned over to the husband to be invested by him for her benefit as if the money were his own, but in other respects the requisite elements of estoppel outlined in *McAdow v. Hassard,* supra, are wanting. (*Schott v. Linscott,* 80 Kan. 536, 538, 103 Pac. 997.) It is familiar law that estoppel does not arise from the mere fact of the husband's holding the title when the debt was contracted, especially when the wife had no knowledge that such debt was being created. (30 C. J. 832-834.) It is argued that the fact that her son had gone into the automobile business and did not have sufficient capital of his own to embark therein, should have caused the defendant mother and wife to surmise that her husband was backing their son, and that the circumstances were sufficient to put her on inquiry. We think not. She may have surmised that her husband was aiding their son in a financial way, but it would be carrying the matter too far to say

she was put upon her inquiry to assure herself that he was not straining his own credit to an extent which would be likely to embroil her with his creditors over her equitable ownership of the land in controversy. (*De Berry v. Wheeler,* 128 Mo. 84, 49 A. S. R. 538; *Blake v. Meadows,* 225 Mo. 1, 30 L. R. A., n. s., 1, and note.)

This court holds that defendant was not estopped to assert her equitable title to the eighty acres purchased with her funds in 1912 and her legal title thereto acquired in July, 1928, as against the execution creditors of her husband.

Passing next to the cross appeal, the trial court made no finding that the $1,000 paid by A. F. Aderhold on the purchase price of the second eighty acres conveyed directly from the vendor to Ida E. Aderhold was part of the original fund intrusted by defendant to her husband in 1909. Indeed, the trial court, upon competent and sufficient evidence, held squarely (finding 8) that the $1,000 part payment on the land bought in December, 1927, was paid "by checks drawn on his individual account, which funds were the property of the said A. F. Aderhold."

We note but cannot approve the appellee's contention that the bank was estopped to assert that the second eighty acres was the property of the husband because it had accepted a payment of interest on the mortgage she had given for the balance of the purchase price. The interest the bank had in the land as assignee of the mortgage was quite a different interest from the right which it claimed to have to insist on the subjection of the A. F. Aderhold interest in it to the satisfaction of his debts. Neither party attacked that finding, and under the rule that a man must be just before he is generous, the judgment creditors of A. F. Aderhold have a stronger claim on that property than defendant. The result is, the judgment must be affirmed in all its parts, and the costs of the appeal and cross appeal should be divided.

It is so ordered.