No. 29,168.

THE KINSLEY BANK, *Appellant*, v. IDA E. ADERHOLD, *Appellee*.

(292 Pac. 798.)

Opinion
on rehearing filed November 8, 1930.
(For original opinion of affirmance see 130 Kan. 126, 285 Pac. 597.)

*F. Dumont Smith,* of Hutchinson, and *A. L. Moffat,* of Kinsley, for the appellant.

*John A. Etling* and *Jerome K. Wilson,* both of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J. This is a rehearing of an appeal first disposed of at the March sitting of this court. (*Kinsley Bank v. Aderhold,* 130 Kan. 126, 285 Pac. 597, 600.) Because of the conclusions the court has now reached, we think it will best serve the convenience of all concerned to restate the case in full.

The plaintiff bank brought the action against Ida E. Aderhold to set aside conveyances to two eighty-acre tracts of land on the ground that the title thereto had been vested in her to hinder and delay plaintiff in the enforcement of its rights against defendant's husband, A. F. Aderhold, who was a judgment debtor of the bank.

Plaintiff's petition alleged the pertinent facts: that on September 7, 1928, it recovered a judgment against A. F. Aderhold for $8,643.67; that $800 had been paid thereon; that an execution against the property of the judgment debtor had been returned unsatisfied; that on July 30, 1928, A. F. Aderhold had transferred and conveyed to the defendant, Ida E. Aderhold, his wife, eighty acres of land, and on December 14, 1927, Aderhold had contracted to purchase another tract of eighty acres and paid $1,000 thereon, and caused the land to be conveyed directly to defendant, and that the purpose of both these transfers of realty was to hinder, delay and defraud the plaintiff.

Defendant answered with a general denial and alleged that prior to 1912 she had intrusted to her husband the handling of $3,500 of her own money, and that on November 4, 1912, he purchased one

of the eighties for her with part of her money and took title thereto in his own name without her consent. She further alleged that on December 14, 1927, her husband, A. F. Aderhold, purchased with her funds the second eighty acres involved in this action for her, and that she had given a mortgage thereon for $2,260 to raise funds to pay the balance of the purchase price, and that the mortgagee had transferred the mortgage to this plaintiff, and that it had accepted from her the accrued interest on said mortgage, $135, whereby plaintiff was estopped to question or deny she was the *bona fide* owner of the legal and equitable title to that property.

On this joinder of issues the cause was tried by the court. It was shown that as long ago as 1909 the defendant received $3,500 from the sale of a tract of land belonging to her, and that she intrusted that sum to her husband, A. F. Aderhold, to invest for her benefit as he should see fit. In 1912, with part of this money, he purchased the first tract of land in dispute (E½, NW¼, 26-23 S-20 W), and took title thereto in his own name. She did not learn of that fact for some years. He paid the taxes and collected the rents, sometimes giving her all of the rent. Sometime in 1927 she requested him to convey the tract to her, and in July, 1928, he did so.

In December, 1927, A. F. Aderhold negotiated for the purchase of another eighty-acre tract (S½, SW¼, 32-24 S-19 W), and made a payment of $1,000 thereon, and caused the property to be conveyed to defendant, Mrs. Aderhold. In 1924, and for many years prior thereto, A. F. Aderhold had followed the career of a public officer or quasi-public officer, as county clerk, county treasurer, bank cashier and postmaster, and was not engaged in any business where he would be likely to need extensive credit; but in 1924 a son of A. F. Aderhold embarked in business as a dealer in automobiles, and sought and obtained credit in substantial sums from the plaintiff bank. This credit, which ranged from $5,000 to $11,000 continuously from April, 1924, to August, 1928, was evidenced by promissory notes given by the son and renewed from time to time, and the father, A. F. Aderhold, signed the notes with the son as joint maker and surety. In 1928 the son became a bankrupt, and the bank recovered judgment against the father, A. F. Aderhold, for $8,621.57 on certain of the notes signed by father and son. A small dividend from the bankrupt's estate was applied on this judgment and the father turned over to the bank a certain property worth

$800, which reduced that judgment to that extent. Execution issued on the judgment in favor of the bank against the property of A. F. Aderhold was returned unsatisfied.

Some of the findings read:

"I. In the year 1924, A. W. Aderhold, the son of A. F. Aderhold, engaged in the automobile business in Kinsley, Kan., and shortly afterward commenced to borrow money from the plaintiff bank to be used in the conduct of his business; and the said A. F. Aderhold signed the notes securing such loans as a joint maker.

"The business transactions between the plaintiff bank and A. W. Aderhold and A. F. Aderhold continued from 1924 until August 3, 1928, when the plaintiff bank filed an action in the district court of Edwards county, Kansas, against said parties on the notes then owing to it; and on September 7, 1928, recovered a judgment against A. F. Aderhold in the sum of $8,621.57.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"V. In 1909 the defendant, Ida E. Aderhold, sold a forty-five-acre tract of land which was owned as her separate property, and received the sum of $3,500 therefor. She gave this money to her husband, A. F. Aderhold, to invest for her as he saw fit, and there never has been any accounting between the said Ida E. Aderhold and A. F. Aderhold covering such transaction. Said money was not given to A. F. Aderhold for the purpose of buying any particular property, or to make any particular investment.

"VI. In 1912 A. F. Aderhold purchased from the money so turned over to him by the defendant, the east half of the northeast quarter of section 26, township 23, range 20 in Edwards county, Kansas. When the purchase of this land was consummated the deed thereto was executed to A. F. Aderhold and delivered to him and by him placed of record, and the defendant Ida E. Aderhold did not know for several years thereafter that the title to said real estate was in the name of her husband. She and her husband on several occasions discussed the matter of having this land conveyed to her, and about a year prior to July, 1928, she asked her husband to make such a conveyance, and on July [30], 1928, A. F. Aderhold conveyed said real property to Ida E. Aderhold. Two or three days prior to the making of such a conveyance, the defendant Ida E. Aderhold learned for the first time that her husband was indebted to the plaintiff bank on the notes which he had signed as joint maker with A. W. Aderhold. . . .

"VII. A. F. Aderhold has at no time within the past thirty years been engaged in any business on his own account, and during such time has been county clerk and county treasurer of Edwards county, cashier of the National Bank of Kinsley, and for the past seven years postmaster of Kinsley.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"IX. It was the general reputation in the community, at all times from 1924 to July, 1928, that A. F. Aderhold was the owner of the east one-half of the northeast quarter of section 26, township 23, range 20, and the plaintiff bank relied upon such general reputation in extending credit to A. F. Aderhold. In the year 1927 the plaintiff bank made an examination of the record title of the land above described and partly relied upon such record in ex-

tending credit to A. F. Aderhold thereafter. At the time of this examination of the record the indebtedness of A. F. Aderhold to the bank was approximately as large as it was at any time from 1924 to July, 1928.

"X. At the time A. F. Aderhold executed the deed to Ida E. Aderhold conveying the real property above described, and at all times during the year 1927, he did not have sufficient assets to pay the amount of the notes upon which he was liable to the plaintiff bank."

On these findings the trial court reached this conclusion of law:

"The court concludes as a matter of law that the defendant Ida E. Aderhold has no right, title or interest to the south one-half of the southwest quarter of section 32, township 24, range 19, in Edwards county, Kansas, and that the same is the property of A. F. Aderhold, and should be sold as provided by law to satisfy the judgment of the plaintiff bank against the said A. F. Aderhold. That Ida E. Aderhold is the owner of the east one-half of the northeast quarter of section 26, township 23, range 20, in Edwards county, Kansas, and that the plaintiff bank has no lien thereon; and that the costs of this action should be divided equally between the parties hereto."

Both parties appeal. Plaintiff contends that under the trial court's findings of fact defendant was estopped to claim title to the eighty acres decreed to be her property. Defendant seeks to maintain the trial court's judgment in that respect, but makes the counter contention that it erred in decreeing that the second eighty-acre tract standing in her name was her husband's property and subject to execution for the satisfaction of his debts.

Touching the first of these appeals, plaintiff stresses the fact that for many years defendant was quite indifferent as to how her husband invested her funds. While she did not know he had bought that land in 1912 with her money, or that he had taken title thereto in his own name, yet he recorded his title that year and she did learn the fact within a few years and was content to let it stand on the record as his property for all the world to see, until about a year before his financial troubles overwhelmed him. Then she did ask him to transfer the title to her, but did not insist on it, and he did not transfer it until four days before the bank brought the suit against him which speedily culminated in a default judgment for $8,621.57. It was a matter of general repute in the community that A. F. Aderhold, defendant's husband, was the owner of the property as well as the record title holder. In 1927 the bank consulted the county record and thereby learned that the title to the land stood in the name of A. F. Aderhold. That incident merely confirmed its belief that it had been dealing with a man having property sufficient to meet his obligations.

Did this situation of affairs create an estoppel against Mrs. Aderhold? The trial court held that it did not—largely constrained thereto, no doubt, by the decision of this court in *McAdow v. Hassard,* 58 Kan. 171, 48 Pac. 846. In that case the rule was stated that "A wife was not estopped as against her husband's creditors to claim a return of property belonging to her, which the husband had been using as his own, but which had been intrusted to him for the wife's use, *where it did not appear* that credit had been extended to the husband upon the strength of his apparent ownership of such property, and *that the wife knew or ought to have known that such extension of credit was made upon the strength of such appearance.*"

It is the soundness of that part of the rule of law just stated in italics that is challenged in this rehearing. In the earlier case of *Holthaus v. Farris,* 24 Kan. 784, it was held that no grounds of estoppel against a wife existed where the record title had not passed into the name of her husband with her knowledge and consent, and where the debt sued on was not created on the faith of such ownership. In *Hagerty v. Goodlad,* 70 Kan. 734, 79 Pac. 664, the action was to subject certain land to the satisfaction of certain judgments against William H. Goodlad. This land had been conveyed in 1887 by William to his brother Samuel, but the deed was not recorded until 1901, nearly fourteen years later. During this long interval the record title stood in the name of the grantor, and the grantor continued in possession, paid the taxes, and made lasting and valuable improvements on the property at his own expense. This court held that the grantee was not estopped from asserting his ownership against creditors of the record title holder where it was not shown that credit had been induced or extended on the faith that the latter was the owner of the property.

In the case at bar, however, the finding of the court is that during the four years' interval when the plaintiff bank was loaning large sums of money to A. F. Aderhold, he was the reputed owner of the eighty acres under present consideration, and that the bank had relied upon such general reputation in extending credit to A. F. Aderhold. In 1927 it examined the county records and verified Aderhold's reputed ownership and thereafter continued to extend credit to Aderhold. If its confidence in his financial responsibility had not been partly confirmed by the fact that the recorded title stood in Aderhold's name, it could and doubtless would have curtailed the credit it was then extending to him, and would have had

a year's leeway to collect from the two Aderholds before the son became a bankrupt.

But for the italicized qualification of the rule announced in *McAdow v. Hassard,* supra, this situation would create an estoppel against Mrs. Aderhold, under the general principle of equity that where one of two parties, both guiltless of intentional wrong, must suffer a loss, the one whose conduct, act or omission occasions the loss must stand the consequences. (*Chicago G. W. Rld. Co. v. Lowry,* 119 Kan. 336, 338, 239 Pac. 758; *Starkey v. Almena State Bank,* 130 Kan. 568, 574, 287 Pac. 251.) For many years Mrs. Aderhold permitted her husband to manage her funds as he saw fit, not as her debtor but as discretionary manager and trustee of her property. She had permitted him to buy this land with her money and take title to it in his own name, and to retain that title for sixteen years. In 1924 credit to the extent of several thousand dollars was granted to him and repeatedly extended for the next four years on the faith of his reputed ownership. The qualification of the general rule expressed in *McAdow v. Hassard,* supra, would relieve her from that estoppel merely because she did not know that credit was being extended to her husband on the strength of his reputed ownership. The matured view of a majority of this court now is that this limitation of the general rule as stated in *McAdow v. Hassard* is unsound. Under the greater weight of authority the knowledge of the wife or notice to her of the existence of facts or circumstances whereby she ought to have known that credit was being extended to her husband on the strength of his apparent ownership is not essential to the creation of an estoppel against the wife. (*Goldberg v. Parker,* 87 Conn. 99, 46 L. R. A., n. s., 1097; *Hobbs et al. v. Frazier,* 61 Fla. 611; *McCormick v. Perkins,* 135 Iowa 64; *Bergin v. Blackwood,* 141 Minn. 325; *Johnson County v. Taylor,* 87 Neb. 487; *Hopkins v. Joyce,* 78 Wis. 443; Note to 30 L. R. A., n. s., 1-7.) Indeed, the prevailing rule outside of Texas and Missouri seems to be that for a wife to permit the record title to her real property to remain in her husband is in itself a representation that he is the owner thereof, and if she acquiesces in his holding of the title for a considerable period of time she is, without further act on her part, estopped to deny his title as against persons who have relied on the appearance which she thus allowed to be created. (*Goldberg v. Parker,* 87 Conn. 99, 46 L. R. A., n. s., 1097; *McCormick v. Perkins,* 135 Iowa 64.)

Under the circumstances shown in this case it was enough to

estop the wife when it was shown that the credit was extended to him on the strength of his reputed ownership, and that barrier of estoppel was further strengthened when the credit was renewed after Aderhold's reputed ownership was verified in 1927 by the plaintiff's examination.of the public records.

This conclusion requires us to say that the rule announced in the third section of the syllabus of *McAdow v. Hassard* is overruled.

Passing next to the cross appeal, the trial court made no finding that the $1,000 paid by A. F. Aderhold on the purchase price of the second eighty acres conveyed directly from the vendor to Ida E. Aderhold was part of the original fund intrusted by defendant to her husband in 1909. Indeed, the trial court, upon competent and sufficient evidence, held squarely (finding 8) that the $1,000 part payment on the land bought in December, 1927, was paid "by checks drawn on his individual account, which funds were the property of the said A. F. Aderhold."

We note, but cannot approve, the appellee's contention that the bank was estopped to assert that the second eighty acres was the property of the husband because it had accepted a payment of interest on the mortgage she had given for the balance of the purchase price. The interest the bank had in the land as assignee of the mortgage was quite a different interest from its right to insist on the subjection of A. F. Aderhold's interest in the land to the satisfaction of his debts. Neither party attacked that finding, and under the rule that a man must be just before he is generous, the judgment creditors of A. F. Aderhold have a stronger claim on that property than defendant.

It follows that on plaintiff's appeal the judgment of the district court must be reversed with instructions to enter judgment in favor of plaintiff and on the cross appeal the judgment of the district court should be affirmed. It is so ordered.