No. 30,443.

Nellie V. Smith, *Appellant*, v. E. L. Rector, The Southwest Building and Loan Association, E. M. Wright and J. E. Wright, *Appellees*.

(10 P. 2d 1077.)

Opinion filed May 7, 1932.

C. W. McVickers and E. E. Paddock, Jr., both of Wichita, for the appellant.

Frank Nighswonger, P. D. Gardiner, O. W. Helsel, Willard Glasco and Harry G. Carlson, all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to cancel two deeds and a mortgage covering certain town lots in Wichita which plaintiff claimed to own, and the title to which had been fraudulently obtained from her under the following circumstances:

Prior to June 27, 1928, plaintiff had been the undisputed owner and title holder of the lots for forty years. On that date, at the instance of one Clifford Hawkins, with whom she had been acquainted for five years and who had gained her confidence, she was duped into signing a deed of conveyance to the lots to one of these defendants, E. L. Rector. Hawkins made her believe she was signing (and acknowledging before a notary) an order directing that an abstract of her title be made so that the lots could be sold. She had no acquaintance with the grantee named in the deed and had never heard of him. Hawkins delivered the deed to Rector—for what consideration does not appear—and that deed was recorded on September 20, 1928. Rector set about the building of a house on the lots, and that improvement had so far progressed on December 27, 1928, that the Southwestern Building & Loan Association, one of these defendants, loaned $1,800 on the property, taking a mortgage from Rector to secure repayment of that sum. That mortgage was recorded December 27, 1928. On January 19, 1929, Rector sold the property to E. M. and J. E. Wright, other defendants herein, subject to the $1,800 mortgage. Having no actual notice of any of these transactions, or that she had parted with her title to the property, plaintiff sent her check for $40.30 to pay the taxes for 1928, and the county treasurer issued to her his receipt (No. 12,525) therefor, dated February 6, 1929. Some time later, the county treasurer wrote plaintiff as follows:

"Upon checking up our tax receipts we find an error in receipt No. 12,525 which you hold. Please bring it in at your earliest convenience and we will be pleased to rectify any mistake that has been made.

"Mr. and Mrs. Rector have paid the first half tax on these lots and say they have a warranty deed. If you will bring or send this receipt we will cancel and return your money."

Plaintiff received that communication from the county treasurer "sometime between May and June, 1929."

Matters were permitted to remain in the situation above stated until February 16, 1931, when plaintiff brought this action against

Rector, the loan association, and the Wrights. Hawkins, who perpetrated the fraud, was not impleaded. Plaintiff charged that Hawkins and Rector were in collusion in the fraud practiced upon her. In her petition she recited the subsequent facts touching the recording of the deed to Rector, the mortgaging of the property to the loan association, the recording of that mortgage, and the subsequent conveyance to E. M. and J. E. Wright.

The defendants filed separate answers raising issues of fact and of law. Plaintiff separately replied to these answers.

A jury was impaneled to try the cause, and plaintiff adduced her testimony. At its conclusion defendants lodged separate demurrers thereto. These were sustained, the jury was excused, and judgment was entered for defendants.

Plaintiff appeals, suggesting several points of law which, in the opinion of her counsel, reveal error in the judgment. Before noting these in sequence, however, it may serve to shorten discussion to state that the allegation that Hawkins and Rector were in a conspiracy to deprive plaintiff of her lots was not sustained by one scintilla of evidence. In the brief of plaintiff's counsel is inserted an affidavit by one McNaughton, who avers that he has known Rector and Hawkins for many years, and that he had a conversation with Rector on July 29, 1931, in which Rector said he and Hawkins had been associated for many years and still were thus associated "selling bonds, etc." That affidavit is of no significance for several reasons. It does not tend to prove that Rector and Hawkins confederated to perpetrate the fraud on plaintiff or that Rector had any hand in it. Furthermore, if the facts recited had any probative force they would be altogether unavailing since the affidavit was not presented to the trial court. (*Gibson v. Enright*, ante, p. 181, 9 P. 2d 971.)

On plaintiff's behalf the rule of law is invoked that where a person is deprived of his property through fraud a resulting trust arises in his favor, and that the party who had thus deprived him of it becomes a constructive trustee who can be required to reconvey the property together with the rents and profits. That is a familiar rule of law where it can be justly applied, but it is one which must be invoked within the time allowed by the statute for relief on the ground of fraud. That time is two years (Civ. Code, § 17; R. S. 60-306, 3d clause) and the time begins to run, not from the date when the fraud was actually discovered, but at the time when the

injured party was given constructive notice of the fraud. That constructive notice was given when the deed to Rector which plaintiff signed and acknowledged was recorded, September 20, 1928. This action was begun on February 16, 1931—two years, four months, twenty-six days thereafter. This was too late, as our multiplied precedents clearly show.

In *Black v. Black,* 64 Kan. 689, 704, 68 Pac. 662, it was held:

"The phrase 'until discovery of the fraud,' in subdivision 3 of section 18 of the code (Gen. Stat. 1901, § 4446), which provides the limitation of two years in case of 'action for relief on the ground of fraud,' and which also provides that 'the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud, does not necessarily mean until the party complaining had *actual notice* of the fraud alleged to have been committed, for constructive notice of the fraud is sufficient to set the statute in motion even though there may be no actual notice. Where the means of discovery lie in public records required by law to be kept, which involve the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient constructive notice of the fraud to set the statute in motion." (Syl. ¶ 2.)

In *Pinkerton v. Pinkerton,* 122 Kan. 131, 251 Pac. 216, the syllabus reads:

"A plaintiff who brings an action claiming that a deed to land was fraudulently filed for record for the purpose of cheating him is asking relief on the ground of fraud, and to escape the bar of the statute the action must be brought within two years after the discovery of the fraud. Notice of the alleged fraud was brought to plaintiff by the filing and recording of the instrument by which the alleged fraud was accomplished, and is sufficient to start the statute of limitations although plaintiff had no actual knowledge of the filing of the instrument."

See, also, Dassler's Kansas Civil Code, annotated, 2d ed., 67, 68.

Counsel for appellant direct our attention to cases like *Kahm v. Klaus,* 64 Kan. 24, 67 Pac. 542, where a rogue duped his sister-in-law into executing to him a deed of conveyance to a tract of land by the pretense that the instrument she was signing was a power of attorney. She did not discover the fraud for four years, but when she did make such discovery her action for relief on the ground of fraud was timely begun. In that case the title was taken in the name of the person who committed the fraud, and title was still in his name when the action was begun. No rights of *bona fide* purchasers or of record title holders who had acquired an interest without notice of infirmity in the title were involved. It is therefore perfectly obvious that cases like *Kahm v. Klaus* are of no consequence in the consideration of the case under present review.

This case presents a good illustration of the age-old rule of law and equity that whenever one of two or more innocent persons must suffer through the wrongdoing of a third, the one whose act or negligence enabled the wrongdoer to accomplish his evil design must suffer the loss. Plaintiff trusted Hawkins and executed the deed to the lots upon his misrepresentations. She was negligent in so doing. It is not shown that either of defendants was negligent in any respect. It was not shown that any of them had knowledge or notice of Hawkins' duplicity. Their rights were therefore superior in law and in equity to those of plaintiff. (*McNeil v. Jordan,* 28 Kan. 7; *State v. Matthews,* 44 Kan. 596, 604, 605, 25 Pac. 36; *Custer v. Oliver,* 93 Kan. 760, 145 Pac. 554; *Kinsley Bank v. Aderhold,* 131 Kan. 448, syl. ¶ 4, 292 Pac. 798.)

The judgment is affirmed.