No. 30,625.

S. L. Chastain and W. E. Chastain, *Appellants*, v. L. L. Crossfield and Ida Crossfield, *Appellees*.

(11 P. 2d 1011.)

Opinion filed June 4, 1932.

*Henry Lampl* and *Rupert Teall*, both of Wichita, for the appellants.

*George McGill, H. C. Castor, Victor J. Rogers* and *J. Harold Jorgensen*, all of Wichita, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action to subject real property, the title of which is in the name of Ida Crossfield, to the payment of a judgment against her husband, L. L. Crossfield. The trial court made findings of fact and rendered judgment for defendants. Plaintiffs have appealed.

Broadly speaking, it is argued that Ida Crossfield is estopped from claiming ownership of the property or from contending that it is not the property of her husband. Specifically appellants complain of findings of fact made by the trial court and of its refusal to make findings requested.

The petition in this action named S. L. Chastain as plaintiff and L. L. Crossfield and Ida Crossfield as defendants. It alleged that in September, 1927, one W. H. Jones obtained a judgment in the district court of Sedgwick county against L. L. Crossfield, S. L. Chastain, and others, for $10,431.50; that in December, 1927, Jones caused execution to be issued on the judgment against L. L. Cross-

field, which execution was returned unsatisfied; that in May, 1929, Jones, for a valuable consideration, duly assigned the judgment to plaintiff, who became and is the owner thereof; that during all the times mentioned L. L. Crossfield was, and is now, the owner of certain described real estate in Sedgwick county, and that for the purpose of hindering, delaying and defrauding his creditors he secretly conveyed the real property to the defendant, Ida Crossfield, who paid no consideration therefor; that since the conveyance L. L. Crossfield has been in the apparent ownership and has managed and controlled the real estate and collected the income and profits therefrom, and in truth and fact the property belongs to him; that Ida Crossfield took the conveyance from L. L. Crossfield in secret trust so that it could not be subjected to the payment of his debts. The prayer was that Ida Crossfield be adjudged a trustee of the real property for the benefit of the plaintiff as a creditor of L. L. Crossfield, and that the property be subjected to the payment of the judgment. The answer of L. L. Crossfield contained a general denial and specifically alleged that the real property in question is now and for many years has been owned by the defendant, Ida Crossfield. The answer of Ida Crossfield contained a general denial and specifically denied that she held the property in trust for her husband, and alleged that she is now and for many years has been the owner in fee simple of the legal and equitable title thereto.

The action went to trial on those issues. At the close of plaintiff's evidence he asked and obtained permission to file an amended petition which joined W. E. Chastain as a party plaintiff, changed the allegation that L. L. Crossfield secretly conveyed the land to Ida Crossfield so as to allege that he secretly conveyed, or caused to be conveyed, the land to her; changed the allegation that Ida Crossfield took the conveyance from L. L. Crossfield in secret trust so that it read "took said conveyance in secret trust"; and further alleged that at all times prior to July 6, 1926, Ida Crossfield, notwithstanding that the title to the real property was in her name, represented that it was the property of L. L. Crossfield; that such oral representations and statements were made by Ida Crossfield directly to the plaintiffs and to others who communicated them to plaintiffs; that plaintiffs relied upon the representations so made, and believing them to be true, extended credit to L. L. Crossfield and signed as sureties the note sued upon by Jones, the judgment upon which was assigned to plaintiffs, as previously alleged. By the time the

amended petition was drafted and filed a part of defendants' evidence had been introduced. Defendants' objection to the filing of this amended petition was overruled. They then asked for time to prepare and file proper pleadings and to meet the issue set forth therein. The court overruled this request with the remark: "You have got practically the same lawsuit. You have got part of your evidence in. Call your next witness." After the evidence was concluded and at the beginning of the argument to the court defendants asked leave to recall Ida Crossfield for the introduction of further testimony and for the case to be reopened for that purpose. That request was refused, the court stating that it did not care to hear more evidence.

The theory upon which the case was originally brought, namely, that the real property in question was purchased by L. L. Crossfield with his own money; that he conveyed it to his wife in fraud of his creditors; that he still held the equitable title thereto and all the outward appearances of actual ownership therein, has been abandoned. The evidence was overwhelmingly to the contrary. Appellants now rely solely upon the additional matter alleged in their belated amended petition, namely, that the defendants told plaintiffs, and others who communicated the information to them, before the note sued upon by Jones was executed, that L. L. Crossfield was the owner of the real property in question and that plaintiffs relied upon those statements at the time they signed the note with L. L. Crossfield. Appellants now argue that Ida Crossfield is estopped to claim ownership of the real property in question as against these plaintiffs. On that point the court found "that no representations were made by Ida Crossfield that said real estate was the property of L. L. Crossfield directly to the plaintiffs or to other persons and that plaintiffs did not rely upon any such representations nor believe them to be true, nor extend credit to L. L. Crossfield, nor sign as surety the note" sued upon by Jones by reason thereof.

Appellants contend this finding is not supported by any evidence, that all the evidence bearing on the question is to the contrary, and that their requested finding to the contrary should have been made. This requires an examination of the evidence, which, for convenience of statement, may be grouped under three headings:

*First,* as to which of the defendants owned the real property in controversy—the same being two farms, one of twenty acres and the other of thirty-two acres, a few miles south of Wichita. The defend-

ants were married at Pratt, Kan., in 1884. The wife learned the millinery business there and went to Joplin, Mo., where she worked at that business on a salary for about two years. She then went to Elgin, Kan., and established a millinery business, which she conducted about two years. During that time, or part of it, her husband was working on a ranch. She sold her millinery business and had between seven and eight hundred dollars in cash. They went to Ponca City, Okla., "when the strip opened," being among the first settlers there. With her money the wife bought a lot with a small house on it, in what proved to be the residence part of the city, for $25. She also bought a lot which proved to be in the business part of the city, on which there was a small building, for $225, and started a millinery business which she operated for more than fifteen years and which was successful financially. Within that time she had bought a quarter section of land near Ponca City, had acquired title to another residence property there, and had moved the small building on the business lot and erected a better building. During this time her husband was engaged in gambling and the liquor business, part of the time running a saloon; but in 1900 she had to pay all of the living expenses. They went to Bartlesville, where they installed a bakery and conducted it for several years. That was sold out and they moved to Wichita in 1907. A property was bought there, the title taken in the name of the husband. He conveyed it to his wife for $8,000, which she had previously advanced to him. When they left Ponca City she sold her millinery business for $3,000. Not far from that time she sold the business property there for $5,500, and the residence lot, for which she had paid $25, she sold for $4,000. She sold forty acres of the farm land near Ponca City for $10,000. This money she had invested, a substantial part of it in building and loan stock. She traded the residence she had acquired in Ponca City for a property in Wichita. In April, 1920, she bought the twenty-acre tract of land south of Wichita; in 1922 bought the thirty-two-acre tract. She paid for these with the funds previously mentioned. All during her married life she had conducted her own business, kept her own bank account, and made her own investments. She produced in court canceled checks, title papers, and other instruments, clearly establishing these facts. It is true that in purchasing the two tracts of real property in question the husband conducted a part of the negotiations, but she paid for them. The title was taken in her name and promptly placed of record. The

husband looked after the farming operations on these lands, but she has paid the taxes on them and received the rents and profits. The wife has been an industrious, conservative, successful business woman. This showing made is obviously genuine. It could not have been prepared simply for this case. As previously stated, appellants have abandoned any claim that the property sought to be charged with the judgment in this case ever belonged to L. L. Crossfield.

*Second,* as to the judgment sought to be enforced in this action and the note which formed the basis of it. The early history of the dealings among the parties not being essential in this case are not shown by the record, but this much is shown: Perhaps early in 1926 the defendant L. L. Crossfield, the plaintiffs S. L. Chastain and W. E. Chastain, and L. E. Hesman and A. O. Borland, under some kind of arrangement among themselves, were having a well drilled for gas or oil, apparently in what oil men speak of as "wild cat" territory. They became indebted to W. H. Jones, of Augusta, Kan., in the sum of $9,500, and on July 6, 1926, all five of them executed a note for that amount payable to W. H. Jones in one year after date, with interest at eight per cent per annum. The note was not paid when due, and soon thereafter Jones brought a suit on the note in the district court of Sedgwick county, naming all of the makers as parties defendant, but alleged that the whereabouts of A. O. Borland was unknown to him. Service of summons was had on L. L. Crossfield, S. L. Chastain and W. E. Chastain. In September, 1927, the action came on for trial and was continued as to defendants Hesman and Borland. The court found that personal service had been made on L. L. Crossfield, S. L. Chastain and W. E. Chastain; that they had failed to plead or answer, and the time therefor had expired, and rendered judgment "against the defendants L. L. Crossfield, S. L. Chastain and W. E. Chastain, and each of them, for $10,431.50, with eight per cent interest from the date of judgment." Execution on this judgment was issued against the defendant L. L. Crossfield and returned unsatisfied. Thereafter, and in May, 1929, W. H. Jones, in consideration of full payment by S. L. Chastain and W. E. Chastain, assigned to them "all of his right, title and interest in and to said judgment, interest and costs." Thereafter S. L. Chastain alone brought this action, claiming to be the owner of the judgment by virtue of this assignment, but in amending the petition when the trial was almost completed added the name of W. E. Chastain as plaintiff. Appellants in the court below and here speak of this note as having

been the debt of L. L. Crossfield and the other signers as being sureties. There is nothing on the face of the note which shows this or indicates otherwise than that the signers were joint makers. Neither does the judgment rendered on the note so indicate; but, on the other hand, was a judgment against them jointly and severally. It is true that W. H. Jones, in his petition suing on the note, alleged that L. L. Crossfield was principal and the other makers sureties. But the payee of a note is not concerned with that matter. The word "surety" in this connection does not appear in our negotiable-instruments law. (R. S. 52-101 to 52-1801.) All persons who sign a promissory note as makers are primarily liable thereon to the payee. (R. S. 52-103, 52-601; *Swan Savings Bank v. Snyder*, 124 Kan. 827, 830, 262 Pac. 547.) Had the defendants in that case answered they could have raised the question of which, as between them, was principal and surety, and could have had the determination of that matter embodied in the judgment as affecting their rights as between themselves. But that would not have affected their liability to the plaintiff. No such pleading was made by them, hence, on the face of the note and the judgment thereon, appellants are not in a position to urge that point. We shall not decide this case on this point, however, for the reason that, although mentioned, it is not specifically urged by appellee; but it was necessarily before the trial court on the face of the record and was proper for the court to consider.

*Third,* as to statements of defendants regarding the ownership of the real property in question and the effect they had on the signers of the note. The plaintiff S. L. Chastain testified that for more than twenty years he was engaged in the lumber business in Wichita and had been acquainted with defendants about eighteen years; that they lived directly across the street from his lumber yard; that one or the other of them was in his office more or less frequently; that prior to the date the note was executed he had a conversation with L. L. Crossfield in the presence of his wife with reference to the property he owned; that in 1910 or 1911 Mrs. Crossfield told witness they owned property in Oklahoma. In 1919 or 1920 she told him that L. L. Crossfield was buying one of the farms in question, and the second one in 1921; that thereafter she told him that Mr. Crossfield had purchased the farms and thought he had got them cheap and would make some money on them; that thereafter, and before July, 1926, on one occasion Mrs. Crossfield told witness that her husband was going to build a house on the

farm. She had a drawing or rough plat of the house and asked him for some suggestions about it. At one time she said her husband had a farm in Oklahoma for which he had been offered $50,000, and that in none of these conversations did she ever say that she was the real owner of the farms. He further testified that he had conversations with L. L. Crossfield about his property, the first along about 1919 to 1922; that he told witness he was on a deal for these farms and was getting them cheap; that later and in the summer of 1926, he told witness that he was raising apples, hogs and chickens and was doing well on the farm. From these and some things Hesman and Borland had told him, and relying upon them, he signed the note in question. On cross-examination, among other things, he stated that he did not know that Mr. Crossfield showed any anxiety to sign the note, but wanted to make it to satisfy the debt of Mr. Jones for the time being, and that the money raised by the note was for the drilling operations in the oil well, in which the signers of the note were interested in having the drilling proceed. A. O. Borland testified that he had known defendants since the spring of 1924, having first met them at the office of the Chastain Lumber Company in Wichita; that some time in the fall of 1925 defendants took him and Mr. Hesman to the farm south of Wichita; that Mr. Crossfield showed them about the place and in the presence of his wife stated that he owned the farm; said he was going to build a house for Mrs. Crossfield on the farm; that he then said he would take them over and show them his other farm, and they drove over to the other place; that on another occasion Mr. Crossfield stated that he owned the two farms which the witness had seen and some city property, and that his wife spoke up and said: "That is not all he owns. He has property close to Ponca City, Okla., a farm. He had been offered over $40,000 for one corner of the Oklahoma farm for water purposes for the city." This statement was made in March or April, 1926, when Hesman and a Doctor Embry were present. W. E. Chastain, L. F. Hesman and Doctor Embry testified to similar statements. Another witness testified that in 1924 or 1925, when Mr. Crossfield was buying some trees from an agent, in the course of the conversation Mrs. Crossfield said that her husband had two farms down by the river and the farm in Oklahoma and that he had to buy lots of trees; that Mr. Crossfield signed the order for the trees purchased. Another witness testified that in a conversation at which he was present Mr.

Crossfield said that he owned two farms south of town and was making plenty of money on them. Barring some details, this is the extent of this evidence with reference to the ownership of the farms. The defendant L. L. Crossfield testified that never in his presence did his wife tell anyone that he was the owner of these farms. He was asked if he had ever told anyone in the presence of his wife that the farms were his and not hers, and he answered, "I don't think I did." The record does not show that Mrs. Crossfield testified on this point, although she gave testimony as to her purchase and ownership of the properties. Perhaps this is why her counsel wanted to recall her as a witness; but whatever the reason was we must consider this record as it was made, and there was no specific denial of those matters by Ida Crossfield. It is argued by appellants that the testimony of plaintiffs and their witnesses as to statements made by Ida Crossfield to them, or in their presence and in the presence of her husband, to the effect that he owned the land in question, was uncontradicted. But this is inaccurate. The defendant L. L. Crossfield specifically contradicted it. His answer to the question as to whether he stated that he owned the farms might be construed as a contradiction of the testimony of the other witnesses on that point, although it is not so positive. It is clear the court did not believe that Mrs. Crossfield had ever made any representations that the land in question belonged to her husband, for at the close of all the evidence the court, after announcing that it found for the defendants generally, stated, among other things: "Now Mr. Crossfield probably said it was his property, but then that wouldn't take the property away from Mrs. Crossfield." But, passing the question of the influence of the testimony of the defendant L. L. Crossfield on that point, the remarks testified to by witnesses on behalf of plaintiffs were casual remarks at the best. At no time did any of the conversations referred to have reference to any dealings respecting the title to the lands. Defendants were not selling the lands nor encumbering them. None of the witnesses was having any business transactions with the defendants which called for any binding statement from either of the defendants with respect to the title of the land. Had these plaintiffs at the time this note was executed inquired of Ida Crossfield with respect to the title to the land, and told her in substance that they understood the land belonged to L. L. Crossfield, and that she had no interest in the title except such as she might have by being his wife, and that they

would not sign this note unless that condition existed, and had she, definitely knowing the purpose of the inquiry, represented and assured them that her husband owned that land and had title to it, and thereby induced them to execute the note with him, a different question would be presented. No such situation is shown by the evidence in this case. Clearly the contention now made that because of the statements shown by the evidence Ida Crossfield is now estopped from claiming title to the land is an afterthought. Neither the appellants nor their resourceful counsel made any such contention when this action was brought, and, considering all the facts and circumstances disclosed by the record, including the delay in raising this question, the trial court should not be criticized for exhibiting some impatience with the request that it hear more evidence about it.

The previously quoted finding of the court is readily divided into two parts: *First*, that no representations were made by Ida Crossfield that the real estate in question was the property of her husband, directly to plaintiffs or to other persons. *Second*, that plaintiffs did not rely upon any such representations and extended credit to her husband by signing the note to Jones by reason thereof. As to the first of these, appellants argue that it is not supported by any evidence and is contrary to all the evidence. But this is inaccurate. It accords with the positive testimony of L. L. Crossfield that no such representations were made to plaintiffs or to others in his presence, as testified to by plaintiffs' witnesses. It accords, also, with many of the facts and circumstances disclosed by the record. As to the second of these, whether plaintiffs relied on such representations, it is true S. L. Chastain testified he did rely upon them. He is the only one who signed the note to Jones with L. L. Crossfield who did so testify. Many things in the record support the finding of the court on this point. None of the conversations testified to by any of the witnesses for the plaintiffs was made at the time any note was being executed, nor when any contract concerning the real property or its title was being considered and when indebtedness of L. L. Crossfield was being incurred. Plaintiffs therefore had no right to rely upon such statements, even if they were made, as testified to by them and witnesses called in their behalf. The record titles to these farms since they were purchased were in the name of Ida Crossfield. One purpose of the recording statute is to enable persons dealing with the owners, or supposed

owners, to know in whom the title is vested. Plaintiffs were engaged in a business in which frequently they were required, or it was at least prudent for them, to examine the record with respect to titles of land owned, or claimed to be owned, by persons with whom they were dealing. They made no such examination. The evidence discloses that at one time, when they were forming this little group of persons to engage in the oil-drilling operations, Mrs. Crossfield said she would take a share or an interest in it. The other parties did not let her have it. No doubt at that time profits were anticipated. Now that losses have resulted they appear to be anxious to subject her property to the payment of the losses. It cannot be said as a matter of law that the finding of the court above quoted is not sustained by the record.

There is not much else to this lawsuit. Appellants rely on estoppel and cite *Gray v. Crockett*, 35 Kan. 66, 10 Pac. 452; *Westerman v. Corder*, 86 Kan. 239, 119 Pac. 868; *Disney v. Lang*, 90 Kan. 309, 133 Pac. 572, and allied cases. None of these cases is in point —the facts differing materially. This court wrote five opinions in the controversy between Gray and Crockett (30 Kan. 138, 1 Pac. 50; 31 Kan. 346, 2 Pac. 809; 35 Kan. 66, 10 Pac. 452; 35 Kan. 686, 12 Pac. 129; and 39 Kan. 659, 18 Pac. 905). It was an action for specific performance of a contract for the sale of real estate made by the husband, in whose name the title was of record. The wife had not signed the contract and claimed to own the property under an unrecorded deed from her husband. The wife was present when the contract was made, was familiar with its terms, and made suggestions as to deferred payments. She did not disclose her claim of title until more than two years after the suit was brought. The court said (35 Kan. 73):

"Mrs. Long stood by and allowed the contract to be executed; to some extent she participated in the negotiations preliminary to the execution of the contract. Her silence as to her title, her acquiescence at the time of the contract, and her failure to disclose her title during the earlier stages of this litigation, invoke against her the familiar rule of justice, that if one stands by and allows another to purchase his property without giving him any notice of his title, a court of equity will treat it as fraudulent for the owner to afterward try to assert his title. 'He who will not speak when he *should,* will not be allowed to speak when he *would.*'" (Citing authorities and quoting from one of them):

"'If a married woman owns real property, but her title is not of record, and her husband enters into a contract for the sale of it, of which she is informed at the time and to which she makes no objection, she will be estopped from

setting up her title to the land to defeat a suit brought against her husband for specific performance of his contract, and so would her grantee.' "

The Westerman case involved representations as to title made by the vendor to the vendee on the sale of real property. He represented and assured the vendee that his title was good, except an outstanding interest not in controversy, and, based upon such representations, a price was agreed upon and paid. About ten months later the vendor learned through an abstracter of what appeared to be an outstanding interest, and gave two dollars for a quitclaim deed. Under it he then asserted a claim to an undivided half interest of the property sold, which the court would not permit him to do.

The Disney case is an action to foreclose a mortgage given for a part of the purchase price of real property. A defense, urged to reduce the amount of the judgment, was that the mortgagee, who was the vendor, had falsely represented the number of acres. The court held that the fraudulent representations, if made, would entitle defendant to recovery of damages for the loss actually sustained, and further held the evidence on the question sufficient to go to the jury.

Here Ida Crossfield's title was of record. In fact, the cases cited by appellants, particularly *Gray v. Crockett,* supra, disclose what plaintiffs would have to show in order to invoke the doctrine of estoppel relied upon. (See, also, *Kinsley Bank v. Aderhold,* 131 Kan. 448, 292 Pac. 798.) Their showing was far short of what was necessary. Here no situation testified to required Mrs. Crossfield either to assert or deny her title. The record title was available to plaintiffs. (*Kelling v. Brooks,* 128 Kan. 55, 275 Pac. 1077; *Debenture Co. v. Hopkins,* 63 Kan. 678, 66 Pac. 1015.)

The judgment of the court below is affirmed.